GEO. W. POTTER, Appellant, v. JENNIE HOURIGAN and JOHN HOURIGAN, Defendants and Appellees.

**Landlord and tenant:** NEGLIGENCE IN MAKING REPAIRS: EVIDENCE. Plaintiff in this action slipped and fell against a railing around an outside stairway landing to the second story of a building, which broke, precipitating him to the ground and causing his injuries. Prior to the accident defendant's attention was called to the fact that one end of the railing was loose and he fastened it to the building. Plaintiff's reliance for damages is not based upon any obligation of defendant's duty to furnish an adequate railing, but solely upon the negligent fastening of the same; and as both ends of the railing remained fastened after the accident there was no showing of liability on the part of defendant.

*Appeal from Woodbury District Court.*—HON. J. F. OLIVER, Judge.

WEDNESDAY, FEBRUARY 16, 1910.

THIS is an action for damages for personal injuries arising out of alleged negligence of a landlord in repairing premises. At the close of plaintiff's evidence, there was a directed verdict for the defendants. Plaintiff appeals.—
*Affirmed.*

*A. Van Wagenen,* for appellant.

*J. L. Kennedy* and *J. P. Shoup,* for appelleees.

EVANS, J.—The defendant, Jennie Hourigan, was the owner of a certain building situated on the west thirty feet of block thirty, in Sioux City. It was at the southwest corner of the block, facing the south in its thirty-foot width on Fourth street, and abutting lengthwise west on Wall Street. Its front entrance was upon Fourth Street. Since the erection of the building, Fourth Street had been elevated at this point for the purpose of forming an approach to a viaduct, so that the surface of the street was on a level with the second story of the building. This second story was used for a barber shop and pool room, and was in the occupancy of a tenant of whom plaintiff was an employee. The rear of the building was elevated from ten to fifteen feet above the natural surface of the ground. Originally there had been a stairway from Wall Street up to an entrance at the rear of this second story. At the head of this stairway was a landing or porch extending across the back end of the building. The stairway in question had decayed and its use had long since ceased, but the occupants of the second story of the building still used the back door and the landing adjacent thereto for the purpose of throwing refuse out of the building onto the ground below. The west side of the landing, where it formerly connected with the stairway, was cut off entire-

ly by a wainscoting. The rest of the landing was protected by a railing "waist high" and consisting of a single two by four. The south end of the east railing was nailed to the building and the north end thereof to a four by four post at the northeast corner of the landing. On Wednesday night, December 23, 1908, the north end of the east railing became unfastened while a companion of the plaintiff was leaning upon it. Plaintiff called the attention of John Hourigan to the fact that the end of this railing was unfastened. Hourigan said he would fix it. On Saturday, Hourigan obtained from the plaintiff a hammer and nails and went out to the porch for the declared purpose of making the repair. Before he returned the plaintiff had gone to dinner. On Monday morning the plaintiff went out upon the back porch for the purpose of throwing ashes therefrom. The allegation of his petition at this point is that the railing had been put in place, but had not been fastened, and that he "stumbled slightly and fell against the railing which was not secured or repaired," and that he fell to the ground as a result thereof. His testimony at this point is:

As I went out of the door, I slipped on the frost a little bit, or stumbled, or something. It was quite frosty and quite slanting, and I threw out my hand to catch the railing and there seemingly was no resistance to it. I went down and must have turned clear over because I struck on my feet. I remember striking on my feet, but I do not remember anything for a little while after that. . . . I didn't lean on the railing and fall. I didn't lean over the railing to dump the ashes. As I went out of the door, I slipped. I think there is a two or three inch fall from the door sill. I slipped outside on the porch. I was probably two feet from the east railing. I slipped and put my hand out that way. It was all done so quick I couldn't say how. If I hadn't slipped, I wouldn't have reached for the railing. I slipped and threw my hand out against the railing.

His· evidence descriptive of the condition of the rail-ing prior to the alleged repair is as follows:

At the south end this railing was fastened to the building. The north end was loose from the post when observed on Wednesday night just after dark. A fellow who had been working there called me out on the back porch. He leaned against the railing and pushed it from the post. It was dark and he grabbed hold of me or he would have gone off. He pushed the north end of the railing loose, it fell down and the south end fastened to the building held it there.

No other description of the immediate circumstances of the accident was given by plaintiff than the above. One other witness, Ernest Pritchard, testified in his behalf to an examination of the porch immediately after the accident. He testified that he examined the back porch and could see where the plaintiff's foot had slipped on the platform and "where the railing was broken in two." "The marks of slipping were about the center of the platform. They looked like heel marks. It looked like a heel had slipped forward. It looked as if he had fallen backwards and grabbed the railing and it broke in two with him and he fell down. I thought he fell backwards and fell under it rather than pitching off." The witness also testified that the break in the railing occurred about a foot from the north end, and that the shorter piece was fast to the post at the north end and the longer piece was fast to the building at the south end and hung suspended therefrom. He also testified that the short piece "kind of slid off." From this we infer that the break involved a split of the railing to some extent. There is no claim that the de-fendant, John Hourigan, had any interest in the premises as a landlord, nor is there any claim that the defendant, Jennie Hourigan, was under any obligation to make the repairs in question, nor that she knew ·anything about the alleged defects, or of the alleged repairs. The claim at

this point is that her husband, John Hourigan, was her agent and was acting within the scope of his authority as such.

We will not deal with the question of agency involved in the case. For convenience in the discussion, we will regard John Hourigan as the landlord. Counsel for appellant has argued the case with commendable candor and has concentrated the argument, upon one question which seems to us quite decisive. In his opening argument the following concession is made:

Plaintiff concedes that there is no liability on the part of the landlord for personal injury resulting from his mere breach of a contract to make repairs, no matter whether this agreement to repair was a part of the original lease or made subsequently, except for such defects as are known to the landlord and are hidden and could not be known to the tenant of ordinary prudence. Plaintiff does not claim that this case comes under the above doctrine, but that he is entitled to recover because the landlord is in all cases liable for negligence in the manner of making repairs, no matter whether the repairs thus undertaken are done in pursuance of some agreement or a voluntary act on the part of the landlord.

This concession renders it unnecessary to consider some of the contentions of appellee. For the purpose of the case, we assume the correctness of the legal propositions adduced by appellant without now passing upon their abstract correctness. His contention, in brief, is that, where a landlord undertakes to make repairs and is guilty of negligent misfeasance, he is liable for injuries resulting therefrom. And that he is liable for nonfeasance "if the injured person is led by the conduct of the landlord to believe that the repairs have been properly made." Under the evidence in this case, there is no claim that the plaintiff expected the landlord to do anything more than to nail up the north end of the railing in question. A "hammer and nails"

were what he took from the plaintiff for that purpose. There is no claim that any information was given to the plaintiff that the repair had actually been made, but we will assume for the purpose of the case that he might properly have inferred such fact from the circumstances. Taking the testimony of the plaintiff and his witness Pritchard, the only inference that could be drawn therefrom was that the plaintiff slipped and fell against the railing and that it broke under his weight. True, the plaintiff does not in his evidence in terms say that he fell. He does say that he slipped and stumbled and put out his hand to save himself. But he expressly alleges in his petition that he "fell against the railing." The testimony of Pritchard is undisputed that the railing was nailed at the north end. Whether the railing itself was deficient in strength or soundness is not a question before us. There is not a suggestion in the pleadings or in the evidence or in the argument that there was any defect in the substance of the railing as distinguished from the fastening of the same. The railing was fastened at both ends, and the pieces remained fastened after the accident. It is clear, therefore, that the jury would not be warranted in finding that the railing had been put in place without being fastened, and that the plaintiff had been misled thereby to his injury. No other inference is warrantable under this evidence than that the plaintiff was thrown against the railing by reason of his slipping, and that he did not lean upon the railing voluntarily nor in reliance upon its security. If a duty devolved upon defendants to furnish an adequate railing, then doubtless the plaintiff's suit might have been predicated upon a breach of duty in this respect, and this could have applied to the sufficiency and soundness of the railing as well as to its fastening. But it is not claimed that any such obligation rested upon the defendants, and the plaintiff's case is therefore necessarily

confined to the very narrow ground already indicated and frankly conceded by his counsel.

We think, therefore, that the trial court properly directed the verdict and its .order is *affirmed*.