250    APPELLATE COURTS OF ILLINOIS.

## Frances J. Shields, Administratrix, Appellee, v. J. H. Dole Company, Appellant.

### Gen. No. 5,719.

1. LANDLORD AND TENANT, § 240*—*liability of landlord for injuries to servant of tenant resulting from defective premises.* A landlord renting an old defective building with no agreement to repair is not liable for injuries resulting to a servant of the tenant from weakness and defects of the building that were as well known to the tenant as to the landlord at the time of the leasing.

2. LANDLORD AND TENANT, § 240*—*when landlord not liable for death of a servant of tenant.* The owner of a building is not liable for the death of a servant of his tenant caused by want of repairs if he would not have been liable had the accident happened to the tenant under similar circumstances.

3. LANDLORD AND TENANT, § 250*—*duty of owner to public to keep building in repair.* The owner of a building owes a duty to the public to keep it in such repair that it will not injure persons rightfully on the premises, but this is to be distinguished from his duty to his tenant.

4. APPEAL AND ERROR, § 1775*—*when judgment on proof of immaterial averments of facts cannot be sustained.* Neither plaintiff nor defendant is entitled to judgment in his favor on proof of immaterial averments of facts, even after verdict in his favor, however much such facts may have been contested on the trial.

Appeal from the Circuit Court of Henry county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. ' Opinion filed April 15, 1914.

JAY L. SPAULDING and GEORGE S. SKINNER, for appellant; DUNCAN, DOYLE & O'CONOR, of counsel.

JOHN T. CUMMINGS and ANDERSON & ANDREWS, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

This is the second appeal of this case. Our former opinion reversing and remanding is reported in 168 Ill. App. 362. On retrial there was a verdict and judg-

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

ment against J. H. Dole Company for $7,895.83, from which it appeals. The jury found the codefendant, McSpadden, not guilty. The pleadings are the same as at the former trial. There is little if any dispute about the controlling facts. The question of law presented is whether a landlord renting an old defective building is liable for injuries resulting to the servant of the tenant from weakness and defects of the building that were as well known to the tenant as to the landlord at the time of the leasing. It is common knowledge that in this country there are many old frame buildings, houses, barns, sheds, warehouses and shops much weakened by age and hard usage that are occupied by tenants, the defects and weakness of the building obvious and it cannot be foreseen what particular timber may break or nail or bolt loosen under a strain, but constant care and watchfulness is required to keep the structure safe. Does the landlord leasing such a building with no agreement to repair owe a duty to laborers and servants of the tenant to make the building reasonably safe at the time of the leasing, is the controlling question in this case.

It appears that appellant on July 1, 1907, was and for several years had been the owner of an old frame grain elevator building located at Kewanee, Illinois, and on that day it leased the same to Samuel W. McSpadden, who had then been in possession of the premises one year as the tenant of appellant. The building was about one hundred feet long and twenty-four feet wide and had stood there fifty years, apparently in constant use for the purpose for which it was built. The partitions separating the different grain bins had become weakened by age and from constant wearing as the bins on either side were alternately emptied and filled. Appellee's counsel well say in their brief: "It is common knowledge that wooden buildings used as this one was, fall into decay and that repairs are frequently necessary to keep them in a condition of safety and fit for use. * * * The whole structure had the ap-

pearance of an old building, as well it might from its fifty years standing. The cleats constantly came off, indicating the general rickety state of the joists and the whole partition. * * * The vibrating and weaving motion of years had loosened and drawn the nails, the loosened timber was worn round at the bottom where it had turned upon the plate upon which it rested. When the corners had been rounded off sufficiently and the nails were drawn, so that they no longer held the timber fast to the plate upon which it rested, the timber slipped over the retaining block which was only two inches in thickness. This caused the top of the partition, which was composed of the two planks spiked together, to spread apart—the north timber against which the studding pressed spread toward the north, away from the south timber, which still remained in its place. Thus the fall of the partition was begun. * * * It was the corner where the cleats constantly became loosened, and leaks were caused to come, that necessitated frequent examination and constant repair. * * * The loosening of the cleats was notice to everybody about the premises that the partition was rickety and that its fastenings were loose, defective and liable to break." In short this was an old frame building weakened by age, incapable of bearing the strain of a newer building, but still capable of use if the occupant adjusted its burden to its perfectly apparent weakened condition and was diligent in patching up the various breaks from time to time occasioned.

On September 12, 1907, Wilbur Barrett, appellee's intestate, then in the employ of the tenant McSpadden, for whom he had been at work about the premises for several months, on the order of McSpadden's foreman went into a bin to shovel out some corn, and while there the pressure from an adjoining full bin broke loose the old defective partition above described, projecting it and the shelled corn back of it on to Barrett, causing his death. Some of the standards to which boards were nailed came loose from their fastenings because of

their weakened and decayed condition and because they were then subjected to an extraordinary strain by the overloading of the adjoining bins with shelled corn.

It is not claimed that these partitions were improperly built; they seem to have stood there many years and served the purpose for which they were constructed. Neither is it claimed that any act of appellant in building, repairing or attempting to repair caused the injury, nor that the tenant McSpadden was ignorant of the condition. On the contrary, it is argued by appellee that the tenant was well aware of the defective condition, and it clearly appears from the evidence that at the time of the leasing, as well as at the time of the accident, the tenant was much more familiar with the actual condition of the premises than was appellant, his landlord.

It appears from our former opinion that there was some question raised whether appellant's association with the business of his tenant, McSpadden, was such that he might be liable because of such connection with the business. There is no ground for that contention on this record, and counsel for appellee now say there is no claim that the lease created a partnership between appellant and McSpadden or that McSpadden was in the employ of appellant. We therefore need not further refer to that question. There is nothing peculiar about the lease that is claimed to affect the question here. There is an express provision that McSpadden, the tenant, shall keep the premises in good repair and the right reserved to appellant to enter the premises for purposes of inspection and making alterations and repairs if it should see fit so to do. It does not appear that appellant made any repairs and we do not see that these provisions affect its liability.

It is not claimed that appellant had any connection with the accident and injury other than its relation to the property as landlord, under the written lease to McSpadden. There is nothing in the record pointing to any duty of appellant to deceased, or any act of

appellant performed or omitted that could have any bearing on liability for his death, other than this written lease and the necessary and natural acts performed under its terms and provisions.

The case must be distinguished from those dealing with the duty of the landlord to persons other than the tenant, his servants and guests, rightfully on the demised premises. The owner of a building owes a duty to the public to keep it in such repair that it will not injure persons rightfully on the premises, and this is to be distinguished from his duty to his tenant. Note to *McConnell v. Lemley*, 34 L. R. A. 609; *West Chicago Masonic Ass'n v. Cohn*, 192 Ill. 210; *Tomle v. Hampton*, 28 Ill. App. 142; *Everett v. Foley*, 132 Ill. App. 438, 142 Ill. App. 250. This distinction is pointed out by the text writers and discussed in many reported cases. It must also be distinguished from those in which the landlord retains possession and control of a part of the premises and injury results to the tenant from want of repair of the part so retained by the landlord, as in *Glickauf v. Maurer*, 75 Ill. 289; and from cases in which the landlord rents different portions of the building to different tenants, leaving himself under obligation to keep the approaches and common hallways in a safe condition; and from those in which there is a hidden defect in the building known or presumed to be known by the landlord, and not known or presumed to be known by the tenant, as in case of a defectively hung chandelier put in by the landlord. *Reichenbacher v. Pahmeyer*, 8 Ill. App. 217. Cases have frequently arisen where a dwelling house was infected by disease germs or poisoned by noxious gasses, and such condition known to the landlord and not known to the tenant. In this class of cases the landlord is under the duty to inform the tenant of such concealed danger, and is liable for injuries resulting to the tenant, his family and servants from a failure to perform that duty. 24 Cyc. 1114, and cases cited in note 51.

The question presented here is one of duty of the

landlord to the servant of his tenant, under a letting in which the tenant at the time of making the lease had at least an equal opportunity with the landlord to know any defective condition of the premises and expressly stipulated in the lease that he would keep the premises in repair. There is no claim that appellant actually knew of the worn condition of the particular standard that broke loose causing the collapse of the partition, and in view of the fact that the tenant McSpadden had been in possession of the premises a year before the lease in question was executed, doing a similar business under a similar lease, there is no room for inference or argument that appellant should be charged with more knowledge of that defective condition than should be the tenant himself.

There is no question but the duty of appellant was the same to deceased, the servant of the tenant, as it was to the tenant himself. Appellant is not liable in this case if it would not have been liable had the accident happened to the tenant McSpadden under similar circumstances. *Sunasack v. Morey,* 196 Ill. 569; *Morgan v. Sheppard,* 156 Ala. 403; *Potter v. Hourigan,* 146 Iowa 73; *Coats v. Meriwether,* 144 Mo. App. 89; *Baker v. Moeller,* 52 Wash. 605; 24 Cyc. 1119, n. 67; and notes in 34 L. R. A. 609.

The tenant McSpadden had been in possession a year before the execution of the lease in question. Appellant had not been in possession except through tenants for some years, if ever. Was it under any duty to McSpadden to search for worn timbers and loose nails and repair or replace the same, before executing this renewal lease? An examination of the authorities leads conclusively to the answer that it was not under any such duty. In *Sunasack v. Morey, supra,* the Court said: "The law is well settled that the rule of *caveat emptor* applies to a contract of letting, and the landlord is not bound to make repairs unless he has assumed such duty by express agreement with the tenant. The tenant takes the premises as he finds them, subject to

his own risk, and there is no implied covenant on the part of the landlord that they are fit for habitation or fit for the purposes for which they are rented, or that they are in any particular condition. The landlord is therefore not liable for damages resulting to the tenant by reason of the demised premises being out of repair, unless he has expressly bound himself to make repairs by the terms of the contract to let. Where, however, there are concealed defects in the demised premises, attended with danger to an occupant, which a careful examination would not disclose but which are known to the landlord, the latter is under obligation, imposed upon him by law, to reveal them to the tenant in order that he may guard against them, and upon the landlord's failure to perform such duty he will become liable for whatever damages actually result to the tenant therefrom. 1 Thompson's Commentaries on the Law of Negligence, secs. 1129-1131; 18 Am. & Eng. Encyc. of Law (2d Ed.) p. 224; 2 Wood on Landlord and Tenant, sec. 381.'' In *Borggard v. Gale,* 205 Ill. 511, the same Court speaking through the same justice, after referring to the *Sunasack* case, *supra,* said: ''The duty resting upon the landlord to notify the tenant of a defect in the premises which a careful examination would not disclose, but of which the landlord has notice while the tenant has not, we think may well be placed upon the ground, in many cases, that a failure to make such disclosure would be a fraud upon the tenant.'' And the Court adds that all the authorities seem to require that the defect must be latent, that the landlord had notice and the tenant had not such notice, and the landlord concealed the defect by failing to notify the tenant of its presence. The above two cases seem to us controlling on the question before us. Many cases involving similar questions have been decided and reported in other States and there is little conflict of authority, if the distinctions of different classes of cases heretofore pointed out are observed. The follow-

ing from 18 Am. & Eng. Encyc. of Law (2d Ed.) p. 215, has been often quoted and approved in opinions of the courts: "At common law it was the well settled rule that, in the absence of any agreement between the parties, the landlord was under no obligation to his tenant to keep the demised premises in repair. The rule of *caveat emptor* applies in regard to leases, and the landlord is not even under an implied obligation to remedy defects in the demised premises existing at the time of the demise. It follows, therefore, that, in the absence of any agreement on the part of the landlord to repair, a tenant cannot recover from the landlord the costs of the repairs made by him, nor can the tenant recover from the landlord for injuries to his property or person, or to the property or person of his family, caused by the defective condition of the demised premises.

The Court in *Morgan v. Sheppard, supra,* quotes the above and cites Taylor on Landlord and Tenant and says: "When the premises are out of repair at the time of letting, in particulars which the landlord is bound as regards third persons not to allow, the landlord is liable for injuries sustained by a third person from such want of repair. The reason for the rule seems to be that in such case the dangerous condition of the premises constitutes a nuisance and the liability of the landlord results from leasing premises upon which a nuisance exists. * * * The rule however of the liability of the landlord for renting premises in such a dangerous condition as to constitute a nuisance does not exist in favor of the tenant, his servants, guests, or others, entering under his title (citing authorities). As to them in the absence of covenant to repair he is only liable for injuries resulting from latent defects known to him at the time of the leasing and which he conceals from the tenant. * * * If the defect is obvious at the time of the letting the tenant takes the possession of premises as he found them and the landlord would not be liable for injuries

resulting from said obvious defects to the tenant, his family, servants or guests," citing authorities, among them *Sunasack v. Morey, supra.*

Numerous cases and statements of text writers can readily be found illustrating this doctrine of concealed defects and consequent fraud of the landlord on the tenant, and the distinction between his duties to his tenant and his duties to the public; but we have referred to enough of them for an understanding of the rule. Our conclusion is that appellant, as landlord, was under no contractual duty to keep the partition in question safe, and cannot be charged with fraud in concealing defects because such defects were as well known to the tenant, McSpadden, as to the landlord, or if the particular defect was not known to either of them the tenant at and before the time of leasing had not only an equal opportunity, but in fact a much better opportunity than the landlord, to discover the worn condition of the timbers and rusty condition of the nails. Therefore, appellant is not liable for the death of appellee's intestate, the servant of the tenant, on the uncontroverted facts of the case, because if it would not have been liable under similar circumstances to the tenant himself it is not liable to his servant.

It is said that this is an action for a wrongful act or omission to act, and that authorities on the duty of the landlord to his tenant and his family and servants by reason of the relation of landlord and tenant do not apply. The authorities cited and relied on in this opinion are as to the duty of the owner of a building, to the public, to persons rightfully on the premises, and to his tenants under the different conditions above pointed out; not merely his duty express or implied, under his contract of leasing. We understand these authorities mean that the owner of a building is under no duty to his tenant, or the servant of his tenant engaged about the demised premises, to make the premises, at the time of leasing, safe from obvious defects arising from age and use as well known to the tenant as to himself. If there is no duty there is no liability.

Shields v. J. H. Dole Co., 186 Ill. App. 250.

Many other questions arising on the pleadings, evidence, instructions and arguments of counsel on the trial in the court below are argued, but it is unnecessary to consider or decide them. The codefendant, McSpadden, was found not guilty, and no appeal is prosecuted or error assigned on that finding or the judgment that followed it as to him; therefore the question of his liability is not before us.

Counsel for appellee urge with much earnestness that as they have tried issues presented by the pleadings and treated by this court in its former opinion as controlling, it is presumed to follow that appellant is estopped to deny that proof of facts so litigated creates a liability. Neither a plaintiff nor defendant is entitled to judgment in his favor on proof of immaterial averments of facts, even after a verdict in his favor, however much such facts may have been contested on the trial. *Woods v. Hynes,* 2 Ill. (1 Scam.) 103.

No liability can be created by pleading and proving facts that as matter of law create no liability. But where a case has been tried mainly or in large part on an issue that the court deems immaterial, it should not be disposed of without affording the parties an opportunity to present and try material issues, unless it appears with great certainty that the record of another trial could not change the result. We will not say that such change cannot be made in this case; therefore the judgment will be reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*