FRANCES M. SCIOLARO, Respondent, *v.* JOSEPH J. ASCH, Appellant, Impleaded with Another.

**Landlord and tenant — negligence — when owner of building leased to several tenants, using elevator controlled by owner, is liable for injury to employee of tenant, caused by negligence in operation of elevator.**

Underlying all the relations of master and servant, innkeeper and guest, and landlord and tenant, there is the fundamental principle that the master, the innkeeper and the landlord assume certain duties which can only be delegated subject to the legal responsibility which inheres in the primary obligation.

*Held*, that the lease between the landlord and the firm by which plaintiff was engaged was properly received in evidence. The covenants thereof relating to the furnishing of elevator service tended to establish the duty of the landlord in respect of that service. The contract between the landlord and the company which operated the elevator did not relieve the former from the duty imposed upon him by the covenant in the lease between him and plaintiff's employers. There was no error in the charge of the trial court instructing the jury that the landlord was obligated to furnish elevator service to the tenants of the building, including the plaintiff's employer, and that he could not relieve himself of that obligation by making a contract with a third party for the operation of the elevators.

*Sciolaro* v. *Asch*, 129 App. Div. 86, affirmed.

(Argued February 17, 1910; decided March 4, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1908, which affirmed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward P. Mowton* for appellant. The trial court erred in admitting the lease in evidence as a measure of the landlord's obligation to the plaintiff. (*Frank* v. *Mandel*, 76 App. Div. 413; *Griffin* v. *Manice*, 166 N. Y. 188.) The trial court erred in the charge to the jury and in the refusal to charge as requested by the defendant Asch. (*Griffin* v. *Manice*, 166 N. Y. 188; *Stackpole* v. *Wray*, 74 App. Div. 310.)

*Herbert J. Hindes* for respondent. The defendant Asch is responsible for the negligence of the elevator employee. (Shearman & Redfield on Neg. § 167; Thompson on Neg. 661; *Crawford* v. *M. & E. Co.*, 163 N. Y. 408; Wood on Master & Servant [2d ed.], § 317; *Althorp* v. *Wolfe*, 22 N. Y. 355; *Simon* v. *Monier*, 29 Barb. 419; *Mayer* v. *Bailey*, 2 Den. 433; *Swydam* v. *Moore*, 8 Barb. 358; *Wellman* v. *Miner*, 19 Misc. Rep. 646; *Spencer* v. *McManus*, 5 Misc. Rep. 267; *Kilroy* v. *D. & H. C. Co.*, 121 N. Y. 22; *Hill* v. *Sheehan*, 48 N. Y. S. R. 410; *Anderson* v. *Boyer*, 13 App. Div. 260; *Lauro* v. *S. O. Co.*, 74 App. Div. 7.) The defendant Asch could not delegate his duty to have the elevators properly operated. (Thompson on Neg. §§ 532, 1078, 1079; Webb on Elevators [2d ed.], § 4; Shearman & Redfield on Neg. [5th ed.] § 14; *Cabot* v. *Kingman*, 166 Mass. 406; *Stott* v. *Churchill*, 15 Misc. Rep. 83; 157 N. Y. 692; *O'Rourke* v. *Feist*, 42 App. Div. 136; *Griffin* v. *Manice*, 166 N. Y. 188; *Sulzbacher* v. *Dickie*, 6 Daly, 469; *Blake* v. *Fox*, 17 N. Y. Supp. 508; *Brennen* v. *Ellis*, 70 Hun, 472; *Prescott* v. *Le Conte*, 83 App. Div. 482; 178 N. Y. 585; *Levine* v. *Baldwin*, 87 App. Div. 150; *Wagner* v. *Welling*, 84 N. Y. Supp. 979.)

WERNER, J.    This action was brought to recover damages for injuries sustained by the plaintiff while endeavoring to alight from a passenger elevator in a building owned by the appellant Asch.    The facts of the case are practically undisputed.    The defendant Asch is the owner of a nine-story building in Washington place, in the city of New York, divided into lofts which are let out to tenants for various manufacturing purposes.    Among these tenants were the firm of Reiter, Fruhauf & Co., who were engaged in the manufacture of clothing, and by whom the plaintiff was employed as a piece-worker.    On the 23rd day of December, 1905, at the close of the working day, the plaintiff stepped upon the elevator at the ninth floor, carrying in her arms a bundle of clothing, and took a place in the corner furtherest removed from the door.    A number of other persons entered, and the descent was made to the ground floor.    The operator in charge stepped out of the car into the hall, and the other passengers had passed out when the plaintiff started to leave.    While she was in the act of alighting the car started upward.    She screamed and thus attracted the attention of the operator, who reached up and pulled her down to the floor of the hall, but not until after she had been caught and crushed between the floor of the ascending car and the upper part of the frame of the door or opening leading from the hall to the elevator shaft.    Then the operator stopped the car.    The elevator is described as a " combination " designed for passengers and freight, and was one of several of similar character used by the tenants, their patrons and employees.    It was of a pattern in common use, moved by electric power, operated by means of a cable extended through the car and the length of the shaft.    To raise the car it was necessary to pull the cable downward about twelve inches, and to lower the car the process was reversed.    The elevator and its appurtenances were apparently in good repair, and the cause of its starting upward at the time of the accident is wholly unexplained. The firm by whom the plaintiff was employed occupied the ninth floor or loft of the building under a lease which,

with other privileges, included "steam heat and usage of passenger and freight elevators in common with other tenants of the building." Instead of operating these elevators through employees of his own selection, the owner had entered into a contract with the National Steam and Operating Company, under which the latter had engaged to take charge of and operate the steam and electric plant, including the elevators, and for that purpose to furnish competent engineers, firemen and elevator attendants. This contract was continued from year to year, and was in force when the plaintiff was injured. Upon these facts this action was brought against Asch, the owner of the building, and the National Steam and Operating Company. The complaint charges the defendants jointly with negligence in the operation and maintenance of the elevator, but the evidence failed to establish any structural defect or lack of repair, and the case went to the jury solely upon the theory that if any negligence had been shown it rested in the undisputed fact that the attendant or operator had left his car before all of the passengers had alighted. The jury rendered a verdict against both defendants, and from the judgment entered upon it the defendant Asch appealed to the Appellate Division, where there was an affirmance by a divided court. The case is now in this court upon the appeal of Asch alone.

The briefs of counsel and their oral arguments cover a much wider range of discussion than is warranted by the record. We are not concerned with the inquiry whether the elevator may have been out of repair, for there was no evidence upon that subject. Neither need we decide whether the case might have been submitted to the jury under the rule of *res ipsa loquitur*, since that rule was distinctly eliminated by the charge of the court. Upon both of these questions the rulings were unequivocally favorable to the appellant. The only evidence tending to support the plaintiff's allegations of negligence in the operation of the elevator rested upon the undisputed fact that the operator had left the elevator before the plaintiff had alighted therefrom. This was the narrow

ground upon which the case went to the jury under instructions which elicited no exception from counsel for either party. These instructions are, therefore, the law of the case, and the verdict of the jury is binding upon the appellant, unless he is right in his contentions (1) that it was error to receive in evidence the lease from him to the firm by which the plaintiff was employed, and (2) that it was error for the court to charge the jury that the appellant's contract with the National Steam and Operating Company did not relieve the former from the obligation to have the elevators in his building operated with reasonable care.

While the lease referred to may not measure or limit the rights of the plaintiff as an employee of the tenant, its covenants relating to the furnishing of elevator service by the appellant tended to establish the duty of the latter in respect of that service. The building was one occupied by a number of tenants, who were to have in common the use of the steam heat and the elevators. As to these things, which were to be furnished by the appellant, he had a general control and a corresponding duty. This control and duty were reciprocal and inseparable. The right to control and manage carried with it the obligation to do so with reasonable care and prudence. This is the necessary implication to be drawn from the covenant of the lease, and that document was, therefore, competent as evidence tending to establish the appellant's duty in the premises.

The contract between the appellant and the National Steam and Operating Company did not relieve the former from the duty imposed upon him by the covenant of the lease between him and the plaintiff's employers. It was a duty which he could not delegate to another so as to relieve himself from the consequences of its non-performance. His position was not essentially different from that of a landlord of a tenement or apartment house who reserves the control of the halls and stairways which are used in common by the several tenants. Although the landlord may employ servants to perform the duty which is inseparable from the right of control, he is

legally responsible for any negligence on their part which results in injury to third persons who are free from fault and are lawfully upon the premises. There is no valid distinction between the landlord's duty in such a case and one where elevators are substituted for stairways as means of ingress and egress to and from the various parts of a building. The element of care involved in the operation of an elevator is not distinguishable from that which applies to stairs and halls, except in degree. Reasonable care in both cases is the measure of the landlord's duty, and that depends in each case upon the degree of danger. The care of an elevator includes the element of prudent operation, and where that is a duty assumed by a landlord it does not differ in principle from the obligation to keep halls and stairways in a reasonably safe condition. Quite apart from the provisions of the lease to which we have referred, the plaintiff's presence in the elevator was justified by the implied invitation which the appellant is deemed to have extended to all persons who might have business in his building. As to such persons the law imposed upon him as owner the duty of seeing that the premises were in a reasonably safe condition for access and egress. (*Griffen* v. *Manice*, 166 N. Y. 188; 2 Shearman & Redfield on Negligence [5th ed.], sec. 704; *Beck* v. *Carter*, 68 N. Y. 283.) This was a personal duty which the appellant could not delegate. " One who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by another person. Therefore, the fact that he may have used the utmost care in selecting an agent to perform this duty, or that he has entered into a contract with any person by which the latter undertakes to perform the duty, is no excuse to the person upon whom the obligation originally rested, in case of failure of performance. His obligation is to do the thing, not merely to employ another to do it." (Shearman & Redfield on Negligence [5th ed.], sec. 14.) If the appellant could relieve himself from the personal duty of having his elevators operated with reasonable care, by

making a contract with others to perform that duty for him, the same thing could be done by a hotelkeeper who maintains elevators in his hotel, but in just such a case we have held that the duty of reasonable care which a hotelkeeper owes to his guests in the management and inspection of an elevator, is one which cannot be delegated. (*Stott* v. *Churchill*, 15 Misc. Rep. 80; affd., 157 N. Y. 692.) The same rule has been applied to those analogous cases in which masters have been held to owe to their servants the duty of providing safe and suitable machinery, tools and implements and safe places in which to work. Cases of this class might be cited by the score, but a brief extract from a single one will suffice. "No duty belonging to the master to perform, for the safety and protection of his servants can be delegated to any servant of any grade so as to exonerate the master from responsibility to a servant who has been injured by its non-performance." (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y. 368, 372.) Underlying all these relations of master and servant, innkeeper and guest, and landlord and tenant, there is the same fundamental principle that the master, the innkeeper and the landlord assume certain duties which can only be delegated subject to the legal responsibility which inheres in the primary obligation. That is the rule by which the appellant's case must abide and it follows that there was no error in the charge of the trial court instructing the jury that "the defendant Asch was obligated to furnish elevator service to the tenants of the building, including the plaintiff's employer, and that he could not relieve himself of that obligation by making a contract with a third party."

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, JJ., concur.

Judgment affirmed.