VAN DAM *v.* DOTY-SALISBURY CO.

1. NEGLIGENCE—MASTER AND SERVANT—LIABILITY FOR NEGLIGENCE MAY NOT BE SHIFTED UPON INDEPENDENT CONTRACTOR—INSTRUCTIONS—LANDLORD AND TENANT.

In an action by a tenant against its landlord for damages to its property caused by the falling of a water tank, due to the accumulation thereon of ice, instructions by the trial court that if the tank had become in such condition by an accumulation of ice upon it as to be a liability of the destruction or falling of the tank, the employing of independent contractors to remove the ice would not relieve the defendants, and that if the formation of the ice on the tank was due to defendant's negligence, the fact that its falling was due to the unskilful manner in which said contractors performed their work would not relieve defendant of liability, *held,* proper; since the doctrine of "independent contractor" has no application.

2. SAME—EVIDENCE—DIRECTED VERDICT.

Defendant's claim that it was entitled to a directed verdict because, under the proofs, the fall of the tank was the result of unknown extraordinary causes which the defendant by the exercise of ordinary care and skill could not have avoided, *held,* not sustained by the record, which contains abundant testimony to support the finding of the jury that defendant was negligent.

Error to Genesee; Black (Edward D.), J.    Submitted January 27, 1922.    (Docket No. 7.)    Decided March 30, 1922.

Case by Herman J. Van Dam and John E. Bellamy, copartners as the Auto Parts Tool & Manufacturing Company, against the Doty-Salisbury Company for damages caused by the falling of a water tank.    Judgment for plaintiffs.    Defendant brings error.    Affirmed.

On liability of landlord for damages to tenant's goods for negligence of independent contractor in making repairs, see note in 15 A. L. R. 975.

*Thomas, Shields & Silsbee,* for appellant.

*Withey & Freeman* (*George W. Cook,* of counsel), for appellees.

SHARPE, J.   On November 1, 1919, the defendant purchased from the W. A. Paterson Company certain premises in the city of Flint.   The buildings erected thereon left an "L"-shaped court in the center, on which stood a water tank constructed of wood, supported about 100 feet above the ground by four legs made of 8-inch angle iron riveted together, each sunk in a concrete foundation.   There were 16 cross girders or braces running from one leg to another and also sway rods fastened into the legs between each set of cross girders, forming an "X" on each side.   The tank itself was 22 feet high and about 20 feet in diameter, slightly tapering towards the top.   Its purpose was to supply a sprinkler system installed in the buildings on the premises.   A frost proof casing from the ground to the tank inclosed a pipe which supplied it with water.   This was connected with the city water main and when a valve therein was opened and the pressure sufficient it was supplied in that way.   When the pressure was not sufficient, the water was forced up by a pump in an engine room adjacent to the court.   There was a gauge on the tank to indicate the height of the water, but it was out of order.   It was the duty of the man operating the engine to see that the tank was filled daily and that when full the water was turned off.   If the water was not turned off and the pressure sufficient, it would overflow the tank.   A pipe had been placed near the top of the tank to take care of this overflow, which was led to the ground a little to one side of the tank.   There was also a hot water pipe leading from the engine room into the tank to prevent the water from freezing.   This heating

apparatus had also been permitted to get and remain out of order. By agreement, the filling of the tank was intrusted to the Dort Motor Car Company, one of the tenants in the building.

The plaintiffs occupied the basement story of one of the buildings on these premises. They had been tenants under the Paterson Company and continued to occupy under the defendant. John P. McCann was the manager of the defendant company. In the latter part of November, 1919, McCann employed one Jerome Hoffman to paint the tank. In doing so, Hoffman found that the tank was leaking and so reported to McCann, who gave him instruction "to go ahead and repair it." Hoffman discovered that to do so he must empty the tank and McCann obtained permission for him to do so from the insurance company carrying the risk on the buildings. After its repair, the tank was re-filled and occasional reports made to McCann that it was overflowing. This was said to be due to unusual pressure in the city mains. Hoffman was employed to connect the overflow pipe with the city sewer. The water from the overflow became frozen and the ice fastened itself to the tank and its supporting structure. About the 22d of January the condition became alarming. Defendant made inquiry and finally secured the services of two men, John Tyler and John Blackburn, to remove this ice. It was a somewhat dangerous task, owing to the height of the tank. A contract was made with them by McCann to do the job for $50. They began work on the afternoon of January 24th. While working at it, Blackburn climbed to the top of the tank and found the water in it frozen over. He cut a hole in the ice, which was from 8 to 10 inches in thickness. Deeming it necessary, Tyler drew off a few inches of the water in the afternoon and, later in the day, the remainder of it. When they quit work that evening, a considerable quantity of the ice had

been removed.   Parts of it in falling had struck and, as plaintiffs claim, had loosened and weakened the supports of the leg-like structure on which the tank rested.   About 11 o'clock that night the tank fell, crushing down through its support and through a portion of the building near by occupied by plaintiffs, almost completely wrecking their plant and putting it out of business.

Plaintiffs brought this suit to recover the damages occasioned thereby.   Their declaration counts on a failure to inspect; a failure to keep in repair; a failure to properly operate; a failure to so provide that the tank would not overflow and thus permit ice to form on and in the tank, and a failure to use proper care in removing the ice.   The plea was the general issue. Plaintiffs had verdict for $13,127.66, on which judgment was entered.   There are many assignments of error.   That most strongly insisted on by defendant is that the court erred in not directing a verdict in its favor.   This will be first considered.

1.   (*a*)   It is insisted that—

"under the proofs the fall of the tank was the result of unknown extraordinary causes, which the defendant by the exercise of ordinary care and skill could not have avoided."

(*b*)   That if it was due to the negligence of Tyler and Blackburn in the manner in which they did their work of removing the ice or the cutting of the hole in the ice in the tank and drawing off the water under it, they were independent contractors, experienced, competent and skilful for such work, and the defendant is not answerable for any negligence on their part.

The court submitted the first question to the jury. As to the second, he instructed them:

"I charge you it was their (defendants') duty at that time to know the condition and take care of this tank.   And if you find it had become in such con-

dition by an accumulation of ice upon the tank as to
be a liability of the destruction or falling of the tank,
then I charge you that the employing of Tyler and
Blackburn as independent contractors to remove the
ice would not relieve the defendants."

. He further instructed them that if the formation
of the ice on the tank was due to defendant's negli-
gence, the fact that its falling was due to the unskil-
ful manner in which Tyler and Blackburn, as inde-
pendent contractors, performed their work would not
relieve the defendant of liability—in other words that
the doctrine of "independent contractor" had no ap-
plication.

It seems well to dispose of this latter contention
first.

(b) Defendant relies on the rule stated in 1
Thompson on Negligence, § 621, as follows:

"One who has contracted with a competent and fit
person, exercising an independent employment, to do
a piece of work not in itself unlawful, or of such a
nature that it is likely to become a nuisance, or to sub-
ject third persons to unusual danger, attended with
danger to others, according to the contractor's own
methods, and without being subject to control ex-
cept as to the results of his work, * * * will not
be answerable for the wrongs of such contractor, his
subcontractors, or his servants, committed in the pros-
ecution of such work."

This rule is subject to many exceptions. Several
of them are noted by the learned writer in the sections
following. We are impressed that the facts in this
case as claimed by the plaintiffs presented an excep-
tion and justified the charge as given. The instruction
was predicated on a finding by the jury that the forma-
tion of the ice in and on the tank and its supports
rendered the structure dangerous to the adjacent
property; that such dangerous condition was due to
the negligence of the defendant in permitting the ice

to so form.   If such were the facts, a positive duty devolved on the defendant to abate the threatened injury.   The performance of such a duty could not be delegated to another as an independent contractor so as to relieve the defendant from the negligent acts of the contractor in its performance.   This exception to the general rule is, we think, well established and founded on reason.   The defendant, after discovering the condition of the tank and its supports, due to the formation of the ice thereon, was chargeable with notice that it was dangerous to the occupants of the adjoining premises.   The duty then devolved on it to remove this danger.   While it acted with commendable promptness and let the contract to men recommended by responsible persons, this was not in itself a full performance of the duty.   It continued to exist until the danger was removed, and the work of removal could not be delegated to another in a manner to relieve defendant of liability for negligence of that other in its performance.

This exception to the general rule has been recognized by this court.   In *Peerless Manfg. Co.* v. *Bagley,* 126 Mich. 225 (53 L. R. A. 285, 86 Am. St. Rep. 537), in speaking of exceptions to the general rule of nonliability, Mr. Justice GRANT said:

"There is, however, another rule, and which may be called an exception to that above stated, viz., that, where one owes an absolute duty to another, he cannot acquit himself of liability by delegating that duty to an independent contractor."

See, also, *Lauer* v. *Palms,* 129 Mich. 671 (58 L. R. A. 67) ; *Blickley* v. *Luce's Estate,* 148 Mich. 233.

In *Sciolaro* v. *Asch,* 198 N. Y. 77 (91 N. E. 263, 32 L. R. A. [N. S.] 945), it was held that the performance of such a duty could not be delegated so as to relieve the person upon whom the duty rested of liability for its proper performance, and the following from Shear-

man & Redfield, Negligence (6th Ed.), § 14, was quoted approvingly:

"One who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by another person. Therefore the fact that he may have used the utmost care in selecting an agent to perform this duty, or that he has entered into a contract with any person by which the latter undertakes to perform the duty, is no excuse to the person upon whom the obligation originally rested, in case of failure of performance. His obligation is to do the thing, not merely to employ another to do it."

In *Wertheimer* v. *Saunders*, 95 Wis. 573 (70 N. W. 824, 37 L. R. A. 146), the court said:

"That one upon whom the law devolves a duty cannot shift it over upon another, so as to exonerate himself from the consequences of its nonperformance, is very clear."

See, *Goff* v. *Great Northern R. Co.*, 3 El & El. 672; *Ruff Drug Co.* v. *Western Iowa Co.*, 15 A. L. R. 962 (191 Iowa, 1035, 181 N. W. 408), and note thereto.

(a) The jury were instructed that in order for the plaintiffs to recover they must find—

"that the defendants are guilty of negligence in the manner in which they took care of and managed and controlled this tank."

At the request of defendant's counsel, they were also instructed:

"I further charge you that the undisputed proofs in this case show that the ice upon the outside of the tank and upon the structure could, by the exercise of ordinary care and skill on the part of a competent, experienced person, have been removed without danger to any one or to any property."

There was no sufficient reason assigned for permitting the tank to so overflow that such a large body of ice should be formed on it and its supports. There

was testimony from which the jury could have found that the supports were greatly weakened by the efforts to remove the ice and that such consequences might have been avoided by the exercise of greater care. Large pieces were loosened and permitted to fall and strike the girders and braces. In their request, defendant's counsel concede that this could have been avoided by the exercise of proper care. While no witness so testified, we think the proofs were sufficient to justify a finding by the jury that the fall of the tank was due to the accumulation of ice on or in it or the negligent manner in which the ice removed was taken off, or both of these causes combined.

There are many other assignments of error, but all discussed by counsel relate to the two questions we have considered. We have read the record carefully, given due weight to all claims of defendant's counsel, and feel constrained to hold that the case was fairly tried and that the verdict is not against the great weight of the evidence.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.