470

Stella A. Kopta, Appellant, v. Greer Shop Training, Inc., et al., Appellees.

Gen. Nos. 43,463, 43,476.

Heard in the first division of this

court for the first district at the October term, 1945.

Opinion filed January 7, 1946. Released for publication January 21, 1946.

FINN & FITZPATRICK, of Chicago, for appellant.

BURT A. CROWE, of Chicago, for certain appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Mrs. Kopta, plaintiff, filed an action at law against three corporations, to recover damages for their alleged negligence, by which she was injured June 2, 1943, when a passenger on an elevator in the building at 2024 Wabash avenue in the City of Chicago. At the close of the evidence each defendant moved for an instructed verdict in its favor. The motion of the owner, South Wabash Building Corporation, was allowed and judgment on the verdict entered in its favor. The motions of Greer Shop Training, Inc. and Continental Products, Inc. were denied. The cause was submitted to the jury and a verdict for plaintiff with damages assessed at $4,500 was returned.

There were motions by Greer Shop Training, Inc. and Continental Products, Inc. for a new trial and for judgment notwithstanding the verdict. The motion of Greer Shop Training, Inc. for a new trial was allowed, and the motion of Continental Products, Inc. for judgment notwithstanding the verdict was granted and final judgment in its favor against plaintiff entered. Mrs. Kopta petitioned the court for leave to appeal from the order granting a new trial. It was allowed. She also appeals from the judgment entered against her notwithstanding the verdict. The appeals have been consolidated.

The issue on plaintiff's appeal from the order granting a new trial is whether the trial court abused its discretion. It is suggested that since on the trial the

Greer Shop Training, Inc. admitted its negligence and liability, the only possible reason for which the new trial could have been granted was that the verdict for $4,500 in damages was excessive. Counsel seem to agree the trial judge gave a new trial because in his opinion the verdict was too large. The question in the trial court upon the motion for a new trial was whether $4,500 was so excessive as to indicate passion and prejudice on the part of the jury. The trial judge manifestly thought it did indicate passion and prejudice. The question on appeal from that order is whether in so holding the trial court abused its discretion.

The evidence shows without conflict that on June 2, 1943, plaintiff, in the exercise of due care, was a passenger on the elevator in the building at 2024 Wabash avenue in the City of Chicago, and was injured through the negligence of an employee of Greer Shop Training, Inc., in control of the elevator. She was severely injured, and her actual damages in loss of wages, payment of hospital and other bills for medical services, were about $600. The Greer shop did not deny liability. Its operator of the elevator was discharged the following day. The evidence of plaintiff and of her physician, however, tended to show that she did not sustain any permanent injury, and that she has fully recovered. On this evidence, this court cannot hold that the trial court abused its discretion in awarding a new trial, and the order must be affirmed.

Appeal No. 43476 presents another and very different question. As already stated, the negligence of the operator, due care of plaintiff and liability of Greer for damages she sustained are conceded.

Plaintiff, however, contends Continental is also liable with Greer and therefore appeals from the judgment entered against her in favor of defendant Continental notwithstanding the verdict. The uncontradicted evidence shows that on the date of plaintiff's

injury Continental had nothing whatever to do with running the elevator by which she was injured. There is no claim the elevator was in disrepair when Greer took possession and charge of it under its lease. Hall, the operator of the elevator, was the servant of Greer, hired by Greer, and fired by Greer the day after the accident. It was by reason of his negligence alone plaintiff was injured. Liability of Continental, however, is argued on the theory that a landlord may not "delegate" his duty to see to it that elevators in a building owned by him and leased to tenants are run with reasonable care. Indeed, the conceded rule is that one running elevators for the transportation of passengers in a building of this kind is held to the highest degree of care consistent with the mode of transportation adopted.

The landlord owner here, South Wabash Building Corporation, was sued by plaintiff with other defendants, but at the close of the evidence the trial court directed a verdict in its favor. Judgment was entered on the verdict against plaintiff, and she has not appealed from that judgment. Plaintiff, of course, had a right to make her election.

Continental is not the owner of the building. It leased the entire building from the owner under a lease executed and delivered February 1, 1942. The property is described in the lease as: "The entire building at 2024 South Wabash Avenue, in Chicago, Illinois: To be occupied for storage and warehousing . . . and for no other purpose whatever." Clause 3 of this lease provided:

"The Lessee shall keep and maintain in *good order and repair both the inside and the outside* of the building herein demised, at its own expense, and shall furnish at its own expense, all heat, water, light, and power, *and shall furnish and maintain its own elevator service.*"

The evidence indicates Greer was then and had been for many years in possession of the premises afterwards subleased to it by Continental.

On February 10, 1943, Continental Products, Inc. demised to Greer Shop Training, Inc.:

"The following portions of the building at 2024 South Wabash Avenue, in Chicago, Illinois:

"All of the basement, second, third floors; the front half of the first floor; and approximately two-thirds of the fifth floor in the front of the building

"To be occupied for a training school for mechanics. . . ."

In addition to the fixed rental, Greer was to pay to Continental a sum equal to a certain percentage of the gross income from the tuition of the school.

Article 3 of the lease provided:

"The Lessee shall furnish heat, water, light and power for the entire building in which the demised premises are situated, including any portions thereof which may be occupied by others, *and shall furnish elevator service during all reasonable business hours for the occupants of the entire building in which the demised premises are situated.* The Lessee shall pay and discharge all electric lighting and power rates assessed or charged against the building in which the demised premises are situated for electricity and power furnished to said building during the term hereof."

The demise did not include the sixth floor of the building, where the accident occurred, but at that time Greer was in possession of it under an oral agreement to move on 24 hours' notice.

There were two elevators in the building, one at the front and the other in the rear. Continental for the greater part made use of the rear elevator but also used the front elevator if necessary or convenient. As already stated, the duty of those who are obligated

to furnish elevator service to tenants and others lawfully in possession of leased premises is that of common carriers generally; namely, the passengers are entitled to the highest degree of care and diligence. *Hartford Deposit Co. v. Sollitt,* 172 Ill. 222. Ordinarily such a carrier cannot limit this liability to a passenger except by express contract with the person carried. Plaintiff, however, further contends that "the landlord's duty to furnish elevator service cannot be delegated." She cites *Trego v. Rubovits,* 178 Ill. App. 127; *B. Shoninger Co. v. Mann,* 219 Ill. 242; *Sciolaro v. Asch,* 198 N. Y. 77, 91 N. E. 263; *Cussen v. Weeks,* 232 Mass. 563; *Rizzi v. Ross,* 117 N. J. L. 362; *McKnight v. S. S. Kresge Co.,* 285 Pa. 489; *Isham v. Broderick,* 89 Minn. 397; *Gobrecht v. Beckwith,* 82 N. H. 420; *Luckel v. Century Bldg. Co.,* 177 Mo. 608.

We have given careful attention to these cases. We have no doubt that the weight of authority is to the effect that the owner of a building several stories in height, with elevators serving, and rented by a landlord to numerous tenants, may not, while the landlord remains in possession of the elevators, transfer to another the responsibility of the operation of the elevators so as to release the owner from his liability for negligence to the tenants or to third parties who are lawfully within the building. This is the law in Illinois and in other States, as expressed in these cases.

In *B. Shoninger Co. v. Mann,* 219 Ill. 242, the opinion states:

"The law is well settled in this State that a landlord who rents different parts of a building to various tenants and retains control of the stairways, passageways, hallways or other methods of approach to the several portions of the building for the common use of the tenants, has resting upon him an implied duty to use reasonable care to keep such places in a reasonably safe condition, and that he is liable for injuries

which result to persons lawfully in the building from a failure to perform such duty."

We are not cited to any case in Illinois where a landlord has demised premises with elevators thereon, of which the tenant has taken possession, control and operation, where the landlord has been held liable for the negligence of the tenant in operating the elevators. There are cases holding the owner landlord liable on other grounds and for other reasons, such as renting the premises in a defective condition without disclosing the condition, which it was his duty to do to a prospective tenant. A case coming nearer than any other to sustaining the theory of plaintiff is *Sciolaro v. Asch,* 198 N. Y. 77, 91 N. E. 263. There Asch, who was defendant, owned a nine story building with lofts, which he let to various tenants. An employee of one of these, while a passenger in one of the elevators serving the building, was injured, as he alleged, through the negligence of the operator. The lease provided the tenant should have the use of the passenger and freight elevators in common with other tenants. The landlord did not operate the elevators by employees hired by him. On the contrary he made a contract with a corporation under which it engaged to take charge of and operate the steam and electrical plant of the building, including the elevators, and for that purpose to furnish competent engineers, etc. The employee injured by the negligence of the operator sued Asch, the owner, and the operating company jointly and recovered judgment against both. On appeal it was argued that the contract between the owner and the operating company did not relieve the owner from the duty imposed upon him by the covenant of the lease. The court said:

"It was a duty which he could not delegate to another so as to relieve himself from the consequences of its non-performance. His position was not essentially different from that of a landlord of a tenement or apartment house who reserves the control of the halls

and stairways which are used in common by the several tenants. Although the landlord may employ servants to perform the duty which is inseparable from the right of control, he is legally responsible for any negligence on their part which results in injury to third persons who are free from fault and are lawfully upon the premises. There is no valid distinction between the landlord's duty in such a case and one where elevators are substituted for stairways as means of ingress and egress to and from the various parts of a building. The element of care involved in the operaation of an elevator is not distinguishable from that which applies to stairs and halls, except in degree. . . . The care of an elevator includes the element of prudent operation, and where that is a duty assumed by a landlord it does not differ in principle from the obligation to keep halls and stairways in a reasonably safe condition.''

We do not question the correctness of this ruling. The landlord had taken upon himself the duty of furnishing proper elevator service to the occupants of the several apartments of his building. In that situation he hired a corporation doing that kind of business to perform this service. The corporation he hired was his agent, and the agent being negligent both principal and agent were liable on familiar principles. That was not the situation in the instant case. A large number of cases are cited, but all of them are, in our opinion, easily distinguishable, and a review of them would unduly extend this opinion.

A case closely analogous to this one is that of *Sikori v. Fellowcraft Club*, 189 Mich. 235, 155 N. W. 495. In that case the owner had leased the three upper floors of a building owned by him ''with a first-class electric passenger elevator and a proper power freight elevator, with access to said elevators and the stairways leading to said upper three floors through the main halls in said building. . . .'' The lease also

provided the club should pay the expense of operating the elevators and repairing the same, the landlord and his other tenants to have the right and privilege of using the elevators. Plaintiff's intestate, in delivering beer to the club, used one of the elevators and received injuries from which he died. The elevator was in charge of the servant of the club, and the accident resulted through his negligence. The administrator sued the club and the owner and recovered judgment in the trial court against both of them. On appeal by the owner the court reviewed *B. Shoninger Co. v. Mann* and *Sciolaro v. Asch,* stating, "A reference to these cases will show them distinguishable from the instant case," and after pointing out the distinction, said:

"In 9 Ruling Class Law, page 1250, it is said:

" 'Where the owner of a building leases different floors or rooms to different tenants, but retains the control and management of an elevator in the building, he is responsible for injuries to tenants, their employees and such other persons as may lawfully use the elevator. But if the tenant has the sole control and management of an elevator in a leased building, he, not the landlord, must give warning and look out for the safety of the persons whom he invites to use the elevator.' "

The opinion then cites *Peake v. Buell,* 90 Wis. 508, 63 N. W. 1053, 48 Am. St. Rep. 946:

"The elevator was operated by the defendant's tenants, and not by him. The defendant owed the deceased no duty in respect to the operation of the elevator. To constitute actionable negligence, the defendant must be guilty of some wrongful act or breach of positive duty to the plaintiff."

The Michigan court, continuing said:

"In the instant case the condition of the elevator was good at the time it was delivered by the landlord to

the Fellowcraft Club. From that time the obligation to keep in repair was upon the Fellowcraft Club. The elevator was in its charge. If the deceased had any right upon the elevator it was because he was helping to deliver the beer to the Fellowcraft Club by means of an elevator that was in its control and operated by its employee. Under these circumstances we think it should be said as a matter of law that the Palmer Estate is not liable, and that a verdict should have been directed in its favor."

The cases are reviewed in 38 L. R. A. 716. We cannot doubt the decision was just and is controlling here. We have already stated the facts that the elevator and other leased parts of the building had passed into the possession and control of Greer Shop Training, Inc., and that the elevator was operated by an employee hired by it before the accident, fired by it after the accident, and working under its direction and control prior to and at the time of the accident. There is not a scintilla of testimony tending to show that at the time of the accident the school was acting as the agent of Continental or had any authority so to do. At the moment plaintiff was injured she was a patron of the defendant Greer, on property possessed by it, on an elevator which it controlled and managed by its servant, through whose negligence she was injured. This case cannot be distinguished from *Sikori v. Fellowcraft Club*. For these reasons we hold the trial judge rightly entered a judgment in favor of Continental notwithstanding the verdict and the judgment against plaintiff and in favor of Continental will be affirmed.

*The appeal No. 43463 will be affirmed and the judgment in No. 43476 will be affirmed also.*

O'CONNOR and NIEMEYER, JJ., concur.