Erskine B. Carson, Plaintiff-Appellee, v. Weston Hotel Corporation et al., Defendants. On Appeal of Marshall Field III, Defendant-Appellant.

Erskine B. Carson, Plaintiff-Appellee, v. Weston Hotel Corporation et al., Defendants. On Appeal of A. C. Lubker, Trading as Elevator Signal and Service Company, Defendant-Appellant.

Erskine B. Carson, Plaintiff-Appellant, v. Weston Hotel Corporation and Wire Rope Corporation of America, Defendants-Appellees.

Gen. Nos. 45,924, 46,016, and 45,975.

Opinion filed October 7, 1953. Released for publication December 14, 1953.

McNamara, Greene & Nordstrand, and Albert M. Howard, all of Chicago, for certain appellant; Oswell G. Treadway, of Chicago, of counsel.

Clarence M. Dunagan, of Chicago, for appellant in No. 45975, and appellee in Nos. 45924 and 46016; Charles D. Snewind, of Chicago, of counsel.

SHERWIN & SHERWIN, of Chicago, for certain other appellant; JULIUS L. SHERWIN, and THEODORE R. SHERWIN, both of Chicago, of counsel.

BAKER, McKENZIE, HIGHTOWER & BRAINERD, of Chicago, for certain appellee; JOHN C. McKENZIE, and DONALD J. DONOVAN, both of Chicago, of counsel.

ANDREW D. COLLINS, for certain other appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is the second appeal in this personal injury action. Plaintiff, a resident guest of the Weston Hotel, was injured when the hoisting cables of the elevator in which he was riding broke and the elevator fell from the fourth floor to the basement. The third amended complaint named Weston Hotel Corporation, Wire Rope Corporation of America, A. C. Lubker, Marshall Field III and Otis Elevator Company defendants. Weston answered. Field's motion to strike was denied and he answered. The rest of the defendants also made motions to strike. These motions were sustained and the suit dismissed as to the Otis Elevator Co., Wire Rope Corp., and Lubker and judgments entered accordingly. The first appeal was by plaintiff from these judgments and this court affirmed as to Otis Elevator and reversed as to Wire Rope Corporation and Lubker. *Carson v. Weston Hotel Corp.*, 342 Ill. App. 602.

On remandment the issues were tried before a jury. At close of plaintiff's case Lubker and Field moved for directed verdicts. The motions were denied and they rested without introducing evidence. Verdicts were returned against Lubker and Field in the sum of $75,-000. They have appealed from the judgments on these verdicts. Weston and Wire Rope introduced evidence and the jury found them not guilty. Plaintiff has ap-

pealed from the judgments on those verdicts. The three appeals have been consolidated in this court.

I

■ Marshall Field contends that the complaint is insufficient to support the judgment against him because the court struck the only allegations charging Field with negligence and plaintiff failed to file amendments. We infer that by failing to amend, on leave given, plaintiff stood by the complaint, since in this court he argues that the trial court erred in sustaining the motion to strike. Though plaintiff prevailed and was in no position to cross-appeal from the judgment in his favor and could not cross-appeal from a mere ruling on a motion to strike, he is entitled to complain of error in the ruling. Supreme Court Rule 39; *Kanousis v. Lasham Cartage Co.*, 332 Ill. App. 525, 534.

■ Field's motion to strike was directed at paragraphs 8–9–10–11–12 and 13 of Count V of plaintiff's third amended complaint. Plaintiff agreed to the striking of the last nine lines of paragraph 8, alleging a partnership between Field and Weston Hotel Corporation. He also agreed to the striking of paragraph 9, alleging that Field leased the premises to Weston with knowledge of a latent defect in the elevator, namely the absence of a slack cable device required by City Ordinance. With respect to the ruling on those parts of the complaint, plaintiff has waived his right to complain.

What remained of Count V, after the elimination of the parts noted, charged that at the "time of leasing" by Field to Weston the elevator "cable, safety devices and appurtenances" were defective and unsafe; that Field knew or should have known of the condition and should have corrected or notified Weston to correct the condition, but failed in his duty to do so, and "leased"

529

the premises with the defective equipment as a result of which the elevator fell etc. (Par. 8). It also alleged that Field knew the elevator was "latently defective" in failing to have a safety device, and knew or should have known that "leasing" the premises with the elevator lacking "safety car or counterweight and . . . slack cable stopping device" would probably cause injury and that plaintiff was injured as the proximate result of this conduct (Par. 10). It further alleged, in the alternative, that "at the time of leasing" the elevator equipment, including the hoisting drum, were in an "operating condition" but subsequently through wear and tear, and not through Weston's negligence, the drum became worn so that the cable in winding overlapped, was thus weakened and as a result broke, causing the elevator to fall (Par. 12). Finally, it alleged that at the "time of leasing" the elevator was in such a defective condition that it was a nuisance (Par. 13).

■■ We think those allegations sufficiently charge negligence on the part of Field. We think defects with respect to the pleading of conclusions were cured by the answer and verdict.

Field contends that plaintiff's evidence and the applicable rules of law, covering the liability of landlord and tenant, conclusively show that plaintiff has no cause of action against him.

The premises in question consisted of five stories and a basement. The first floor consisted of stores and a lobby. The entire premises were leased to Weston May 29, 1937 by separate leases for ten years by the then owners. In January, 1942 the terms were extended to June 30, 1952. In December, 1945 the owners deeded their interests to Field, subject to the leases, which were assigned to him. The leases were in effect when plaintiff was injured February 9, 1949.

530

■■ The general rule in Illinois is that a tenant or occupant of the leased premises and not the owner is responsible for injuries resulting from the defective condition of the demised premises. *Wagner v. Kepler,* 411 Ill. 368; *West Chicago Masonic Ass'n v. Cohn,* 192 Ill. 210; *Jackson v. 919 Corporation,* 344 Ill. App. 519. The owner may be made liable if the lease imposes upon him the duty to repair; if the dangerous or defective condition causing the injury was in existence when the lease was made; or if the condition causing the injury was a nuisance. *West Chicago Masonic Ass'n v. Cohn.*

■ We are satisfied from a study of the lease that Weston had the primary obligation to keep and maintain the elevator in a safe and good condition of order and repair. The reservation of the right to repair if Weston did not fulfill its duty to repair and of the right to inspect in order to determine whether the duty was performed did not oblige Field to repair the elevator drum. *Jackson v. 919 Corporation,* 344 Ill. App. 519. Neither did the fact that Field made inspections and repairs (which he was under no obligation to make), on the smokestack, sidewalks and water tanks. *Jackson v. 919 Corporation.* The reservation in the lease gave Field no control over the elevators, and the rule is that he is not, under those circumstances, liable for injury due to its defective and unsafe condition not in existence when the lease was made. We conclude that the lease imposed no obligation on Field to repair. This is clear from the lease. There is no question of fact for the jury on the element of an agreement by the landlord to repair.

■ Plaintiff does not argue here in support of the judgment on the theory of a nuisance existing at the time of the leasing. There is no basis for the claim that because of the stores, occupied by others

531

than Weston, the elevator was in possession and control of Field as the elevator in *Kopta v. Greer Shop Training, Inc.*, 327 Ill. App. 470 was in control of Greer. The lease covered the stores, though one provision might indicate that they were excluded. Since exclusive control was in Weston, there is no basis for a claim against Field under the doctrine of *res ipsa loquitur*.

 There is no evidence tending to prove that when the lease was made in 1937, the elevator equipment was in a dangerous or defective condition. There is no evidence that the guide for the cable was then missing or that the ridges on the drum had been worn so as to render it dangerous or defective. Plaintiff does not claim that there is evidence which tends to make that proof. There is no evidence that Field assumed greater obligations under the lease than his assignors with respect to repairs. Furthermore, Weston was in possession of the entire premises for eight years before the lease was assigned to Field. *Shield v. J. H. Dole Co.*, 186 Ill. App. 250. In the absence of proof of any agreement to repair or that the elevator equipment was in a dangerous or defective condition when the then owners parted with possession and control, there can be no liability on the part of Field. *West Chicago Masonic Ass'n v. Cohn*, 192 Ill. 210.

We conclude as a matter of law that under the circumstances of this case Field is not liable. We have considered all the points raised, arguments made and cases cited which are necessary to this conclusion. The case of *Morris Company v. Southworth*, 154 Ill. 118, involving a suit by a tenant against a landlord for the costs of repairs, made by the tenant and authorized by the landlord, involving injuries to "strangers," is not helpful.

## II

Lubker contends that the court erred in denying his motion for a directed verdict at the close of plaintiff's

case. The question is whether there is any evidence to support the allegation that he improperly installed and maintained the cable. This is decided by taking the evidence favorable to, and drawing legal inferences most strongly in favor of, plaintiff and disregarding contradictory, contrary or unfavorable evidence.

■ We agree with Lubker that the propriety of the ruling on his motion for a directed verdict at the close of plaintiff's case, must be determined as of the time it was made. *Condon v. Schoenfeld*, 214 Ill. 226. This rule eliminates from consideration on this point the bills for services submitted by Lubker to Weston. These were introduced in defense by Weston.

There is testimony that Lubker purchased two ⅝th-inch cables, each 115 feet in length from Wire Rope Corporation about April, 1948; that the cables were shipped by Wire Rope to Weston, with knowledge that they would be used on an elevator; that prior to the accident the City inspector had inspected the elevator shaft and mechanism several times and at "various times made recommendations for repair and main-tenance of it"; and that a "couple of times" the oper-ation of the elevator was stopped, the inspector called the police and Weston had Lubker's Elevator Signal and Service Co. come and "take care of it."

There is evidence that the cables themselves were in good condition when shipped and after the installation; that an inspection on the day following the accident disclosed that the ridges or grooves in the drum, on which the cables wound and unwound as the elevator ascended and descended, were worn; that the guide which automatically moved the cable into the grooves was missing; that these conditions could cause the cable to overlap so as to bring about abrasion and weaken the cables; that they could cause kinks in the cables which would take away the cable tensile

strength; that the broken cables in evidence showed marks of abrasions and indicated kinks; that cables weakened through abrasions and kinks could break from sudden burdens; that right before the accident the elevator stuck momentarily before plunging to the basement; and that the drum could keep winding while the elevator was stuck, thus straining the cables.

There was also evidence that safety appliances designed to act as brakes to prevent the dropping of the elevator were missing or did not function properly. There was evidence that the electrical equipment controlling the elevator operation was not suitable, was improperly installed and "unethical."

There is no evidence of what precise repairs or maintenance Lubker was called in to do. There is no direct evidence in plaintiff's case that Lubker rendered monthly service.

The inferences favorable to plaintiff are that Lubker installed the cables; that thereafter there were recommendations made to the Hotel Corp. for repairs and maintenance; and that these were "taken care of" by Lubker. The testimony gives rise to a reasonable inference that the ridges of the grooves in the drum were worn, so that the cables wound improperly, when the cables were installed, since this was the condition only 10 months after the installation. A reasonable inspection disclosed the condition of the drum grooves at the time of the accident and a favorable inference is that a reasonable inspection should have disclosed it to Lubker at the time of the installation. We think he had a duty not to install the cables on a drum which disclosed the dangerous condition. He should have foreseen that, in doing so, what happened was likely to happen. We said in our previous opinion that "it is a mistake to think of the cable aside from its use in operation." *Carson v. Weston Hotel Corp.*, 342 Ill. App. 602, 606.

 This conclusion is enough to justify the trial court's denial of the Lubker motion. There was some evidence of negligence and the question was for the jury.

Lubker introduced no evidence in defense. His attorney asked the court what Lubker's position was with respect to "improper" defense testimony against him. The court answered: "Well, as I understand, *any* evidence from here in doesn't bind you." Lubker "rested" after the denial of his motion under the impression that his case could go to the jury on the factual issues with the evidence limited to that which had been introduced at the time his motion for directed verdict was made.

 This was a misapprehension. If Lubker intended to stand by his motion, he should have informed the court to that effect and should have refused to participate further in the trial. "Resting" was not the proper procedure. That term as commonly used presupposes that plaintiff has introduced evidence of a cause of action.

 If, after the ruling on his motion, Lubker intended that his case should be submitted to the jury, he was in the case for all the evidence no matter who produced it. *Postal Telegraph-Cable Co. v. Likes,* 225 Ill. 249; *Condon v. Schoenfeld,* 214 Ill. 226; and *Jennings v. Baltimore & O. R. Co.,* 195 Ill. App. 543. Under his misapprehension, Lubker introduced no evidence, but he did offer instructions which were given to the jury. These instructions were inconsistent with plaintiff's instructions with respect to the evidence that was considerable by the jury as to Lubker. The theory of Lubker's instructions was that the jury was limited to the evidence introduced in plaintiff's case. Plaintiff's instructions were to the contrary. Lubker's attorney moreover, argued to the jury that after plaintiff's case was in "nothing that

535

happened," was binding on Lubker. Plaintiff's attorney on the other hand argued for inferences favorable to plaintiff because of the failure of Lubker to produce evidence. This argument is proper where a prima facie case is made (*Petersen v. General Rug & Carpet Cleaners*, 333 Ill. App. 47; *Beery v. Breed*, 311 Ill. App. 469) but it added to the predicament in which Lubker was placed. We think that Lubker did not have a fair trial because of these circumstances and that he should have a new trial.

## III

 We think there is no merit in plaintiff's contention that the verdict in favor of Wire Rope is against the manifest weight of the evidence.

The elevator was operated on two ⅝th-inch cables made by Wire Rope. Each cable had a maximum breaking strength of 12,800 pounds and each bore an equal proportion of the weight lifted. The cables were not flattened, abrased or kinked when they were sold to Lubker. There was testimony that after the accident these defects were present.

There was a written report given by the City elevator inspectors after the accident, that the cables were of "inferior quality." Both inspectors also testified that the cable when installed was examined by them and was good; that it was examined again in May and in September, 1948 and there was nothing wrong with it and it was in perfect working order. They tested it by overloading the elevator car by 25 per cent. The inspector who wrote the opinion testified his opinion as to "inferior quality" was based on the inference that since the cables broke in "11 months, when others go 10 years" that they must have been of inferior quality. He had examined it previously and found it in "excellent" and "perfect" condition, and "good" cable.

■ Plaintiff contends that the argument of the attorney for Wire Rope was prejudicial. Plaintiff's case against Wire Rope is not close on the facts and we think that the argument complained of did not prejudice plaintiff and that another jury could not reasonably come to a different result. *Village of Atwood v. Otter,* 296 Ill. 70. There is no substance to this contention.

### IV

■ We have already concluded that Weston had exclusive control of the elevator. Plaintiff charged Weston with negligence in the operation of the elevator with defective cable. The only instruction given with respect to the action against Weston set forth the allegations of the complaint and directed the jury to find defendant guilty should the allegations be proved. It is evident that the case did not go to the jury on the *res ipsa loquitur* theory. We shall not, therefore, consider plaintiff's argument that Weston is liable under the *res ipsa loquitur* doctrine.

■■ Plaintiff contends that Weston is guilty of negligence as a matter of law because it is a common carrier. He cites *Springer v. Ford,* 189 Ill. 430 in support of the contention. Weston does not dispute the rule of law in the *Springer* case but argues that the rule is inapplicable since it did not control or operate the elevator. The argument is unavailing since we have already concluded that Weston did control and operate the elevator. Plaintiff was rightfully a passenger in the elevator and Weston was his common carrier. The accident happened, when the elevator gave way while he was being transported. These facts raised the presumption of negligence on the part of Weston, which then had the burden of rebutting the presumption by a showing of extraordinary care and diligence. *Springer v. Ford,* 189 Ill. 430.

 The only testimony presented by Weston was a number of statements for service rendered by Lubker. Weston adopted as part of its case the testimony of the two clerks who were plaintiff's witnesses. It then rested. The testimony of the clerks does not tend to prove extraordinary care and diligence. The statements from Lubker were for "elevator service and repair for the Weston Hotel." They merely itemized the service charges of $15 per month from February, 1948 to January 31, 1949. The statement for May carried the item of installation of the two ⅝th-inch cables "from car to drum," $95. The statement for August 31 carried the item of installation of "two floor switch coils at $6.00 each." There is no testimony of care and diligence. Lubker did not testify as to what the services rendered consisted of or how they were performed. That he rendered the services does not exculpate Weston. It could not delegate its duty to Lubker (*Kopta v. Greer Shop Training, Inc.*, 327 Ill. App. 470), though we agree that it could not do the work involved and had to employ someone to do it. The plaintiff did not have the burden of showing that Lubker was not competent or that Weston did not exercise prudence in contracting with Lubker. Lubker's competence and Weston's prudence were elements included in Weston's burden of showing extraordinary care and diligence. We conclude there was no showing of extraordinary care and diligence.

 The trial court erroneously instructed the jury as to the requirements of proof on the part of plaintiff against Weston. The jury should have been told of the presumption in favor of plaintiff and the burden upon Weston of establishing extraordinary care and diligence under the rule in *Springer v. Ford*, 189 Ill. 430.

Plaintiff made no motion for a directed verdict or a judgment notwithstanding the verdict. His motion for a new trial as to Weston was denied. We think the judgment on the verdict in favor of Weston should be reversed and the issues between it and plaintiff retried under proper instructions.

For the reasons given herein the judgment against Marshall Field III is reversed; the judgment in favor of Wire Rope Corporation of America is affirmed; and judgments against Lubker and in favor of Weston Hotel Corporation are reversed and the cause as to them remanded for a new trial consistent with this opinion.

No. 45924—*Judgment reversed.*

No. 46016—*Judgment reversed and cause remanded.*

No. 45975—*Judgment for Wire Rope Corp. of America affirmed. Judgment for Weston Hotel Corp. reversed and cause remanded.*

FEINBERG, P. J. and LEWE, J., concur.