HELEN WILLIAMS, a widow, and JEANNE WILLIAMS
and SUSAN WILLIAMS, minors, by HELEN WILLIAMS,
their mother and next friend, Plaintiffs and Appellants,
v. MARVIN MALEY and RUDOLPH L. BERTOLINO, d/b/a
Bertolino Trucking Co., Defendants and Respondents.

No. 10957.
Submitted October 17, 1967. Decided November 29, 1967.
434 P.2d 398.

Jones & Jones, Roland V. Colgrove (argued), Miles City, Hughes & Bennett, Michael J. Hughes (argued), Helena, for appellants.

Lee Overfelt, Billings, Gene Huntley (argued), Baker, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the plaintiffs, hereinafter referred to as the appellants, from a jury verdict for the defendants and an order denying a motion for a new trial.

Appellants are the wife and two minor daughters of Gerald Williams, one of two men killed in the collision which is the subject of this suit. The defendants, hereinafter referred to as the respondents, are Marvin Maley, the driver of one of the trucks involved in the collision, and Rudolph Bertolino d/b/a Bertolino Trucking, who is the owner of the truck and the employer of Maley.

The collision in which Williams was killed occurred on January 23, 1964. Williams and another man killed in the acci-

dent were employees of the State of Montana. On the morning of the accident they had been assigned the sanding of a stretch of highway north and south of Miles City, Montana. They had finished sanding to the southern limits of their route, and were returning to Miles City sanding bridge approaches, as was the custom if there was any sand left.

At about the time of the collision Williams and his partner had stopped momentarily to begin sanding the southerly approach to Log Creek Bridge.

Log Creek Bridge is located at the bottom of a gully. The southern edge of the gully or the ridge is approximately 53 feet higher than the bridge and approximately 1,200 feet from the southern end of the bridge.

On the day of the accident, respondent Maley had for some time been following a truck driven by Reino Lampinen. Maley crested the ridge above Log Creek when Lampinen's vehicle was approximately half way between the ridge and the bridge. Lampinen testified that he notice the state truck when he crested the ridge. As he got half way down the hill, he realized that the state truck was in the middle of the highway and not moving. Lampinen put on his brakes, but released them when the sanding truck started to move. The state truck then appeared to stop again, leaving its left rear corner in the left hand travel lane. By this time Lampinen could not stop, so he swung around and passed the state vehicle.

Maley testified that he was never less than 550 feet from the lead vehicle during the descent into the gully. He testified that he did not see the lead vehicle pull out and pass the state vehicle and that he did not see the state truck until he was approximately 36 feet from it.

The evidence as to whether the state vehicle had its amber warning light on at the time of the accident is contradictory. Defendant Maley and the driver of the vehicle he was following testified that it was not. Other witnesses who passed the sanding vehicle near the time of the accident testified that

the light was on at those times. Subsequent to the wreck, an investigation of the wrecked truck revealed that the switch which controlled the light was in the "on" position.

Testimony as to the visibility conditions was also contradictory. Witnesses for the respondent tended to agree that a light snow was falling and that moving vehicles kicked up some snow. Lampinen and defendant Maley agreed that falling snow greatly hampered visibility, and that visibility was even further reduced by the snow kicked up by moving vehicles.

During the course of the trial, plaintiff introduced into evidence a portion of the Safety Manual issued by the Montana Highway Commission. Defendants introduced into evidence portions of the same manual, and the whole of the Manual on Uniform Traffic Control Devices for Streets and Highways.

On the basis of this evidence, the judge issued Court's Instruction No. 19 as follows:

"The jury is instructed that it is for you to determine from all of the evidence whether the deceased and his co-worker complied with work regulations in protecting the traveling public when they engaged in sanding operations.

"You are further instructed that if you find that they failed so to do and that their failure contributed as a proximate cause of this accident, then the heirs in this action cannot recover."

Appellants contend that it was error for the court to allow defendants' exhibits into evidence and that it was also error to issue Court's Instruction No. 19 based on this evidence. Appellant contends that it was a matter of law for the court to decide the relevance of these two manuals and that the court should have decided that they had no relevance in determining the standard of care of the deceased and his co-worker. Therefore, they should not have been allowed into evidence and no instruction should have been based upon them.

The disputed portion of the Safety Manual is as follows:

"Section 9 Protective Devices, Subdivision D.

"It is the responsibility of Engineers, Supervisors, and Foremen to see that slow one-way traffic ahead or other warning signs are properly placed to protect our men and the traveling public before work is started on any highway, and to see that they are removed when no longer required. Slow one-way traffic ahead signs shall be used when one lane of the highway is obstructed, but for no other purposes. All warning signs shall have a red flag attached to the upper left hand corner. All mowers shall be equipped with a red flag mounted on a limber pole or another device eight feet above the ground. Excavations in the roadway shall be protected with barricades in addition to the signs, and at night flares shall be placed at the signs and at the barricades."

The relevant portions of the Uniform Manual on Traffic Control Devices are as follows:

5A—2 Scope

"These principles and standards are aimed at the protection of the public and workmen, the minimizing both of inconvenience to the public and of economic losses, and the maintaining of public good will."

5A—4 Responsibility

"The provisions for public protection established herein are for application by (1) State highway department, county and municipal forces performing construction or maintenance operations on roads and streets * * *."

5B—4 Erection of Signs

"For maximum mobility on certain types of maintenance operations, a large sign may sometimes be effectively mounted on a vehicle stationed in advance of the work or moving along with it. This may be the working vehicle itself, as in the case shoulder-mowing or paint-striping equipment."

5B—27 Men Working Sign

"The MEN WORKING sign shall be used in conjunction

with minor maintenance and public utility operations for the protection of men working in or near the roadway."

5B—29 Road Machinery Ahead Sign

"The ROAD MACHINERY AHEAD sign shall be used in areas where heavy road equipment, such as a grader, is operating in or closely adjacent to the roadway."

5B—30 Road Work Ahead Sign

"The ROAD WORK AHEAD sign is intended for use in advance of maintenance or minor reconstruction operations in the roadway."

Both of the manuals involved in this case were adopted pursuant to legislative authorization. R.C.M.1947, § 32-1606, granted the Highway Commission the power to "formulate necessary rules and regulations for the construction, repair, maintenance and marking of state highways and bridges * * *." In the case of Koppang v. Sevier, 106 Mont. 79, 92, 75 P.2d 790, this court held that this statute gave the Highway Commission the power to make rules for the protection of public and men working on repair, construction or maintenance of highways. The Safety Manual was adopted under this grant of power.

R.C.M.1947, § 32-2133, gave the Highway Commission the power to adopt a manual "for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within the state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American association of state highway officials * * *."

R.C.M.1947, § 32-2134 gave the Highway Commission the power to sign the state highways with signs consistent with those provided in whatever uniform manual was adopted. Pursuant to this grant the Manual on Uniform Traffic Control Devices for Streets and Highways, the one involved in the present case, was adopted.

In the recently decided case of Faucette v. Christensen, 145

Mont. 28, 34, 400 P.2d 883, a driver was charged with negligence *per se* for passing within one hundred feet of an intersection, an action prohibited by statute. However the intersection was marked with a broken white line, which under the manual indicates that in such an area passing is permitted. This court asked the question:

"\* \* \* Should not the other statutory 'rules of the road' and the highway markings formally established by the highway commission under statutory authorization have equal dignity? Should not the statutes, then, be construed together and harmonized in determining questions of negligence. We believe they should."

It has long been the position of this court that the violation of a statute enacted for the safety of the public is negligence *per se*. Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1 (1957). In the present case then, if the deceased had violated any of the regulations which imposed a duty upon him, then that violation would constitute negligence *per se*, and his heirs would be unable to collect.

However, it goes without saying that there can be no violation of a statute or a regulation unless there is a duty upon the person charged with the violation to observe the statute. In the present case a reading of the various rules adopted by the Highway Commission reveals that there was no duty upon the deceased to observe them and, hence, there could be no violation of them by him.

Section nine of the Safety Manual imposes a duty upon "Engineers, Supervisors and Foremen" only. Since the deceased was officially classed as "truck driver under three ton" this section imposes no duty upon him.

The second group of rules which form the basis for Court's Instruction No. 19 are those quoted from the Manual on Uniform Traffic Control Devices. It is clear from a reading of the legislation authorizing the Highway Commission to adopt a uniform manual and authorizing the Commission to

sign the highways in accordance with that manual, that the mere adoption of the manual did not give it a status equal to that of a statute. R.C.M.1947, § 32-2134, authorizes the Highway Commission to sign the highways of the state in conformity with the manual "as it shall deem necessary." The same statute makes it unlawful for anyone else to erect signs upon highways. Thus, until the Highway Commission has acted to direct the erection of a sign, there is no duty placed upon anyone to act in a certain manner just because the Manual on Uniform Hraffic Control Devices would seem to indicate that such a sign should be erected. Without direction by the Highway Commission there is no duty to place a sign.

The evidence is abundantly clear that the Highway Commission had issued no directives dealing with the subject of signs on sanding operations. John Van Vynck, division engineer, for the Miles City division was allowed to testify that not only did he not have a copy of the Manual on Uniform Traffic Control Devices in the Miles City office, but that he had not even received any directives based upon the Manual relative to sanding operations, other than that pertaining to lighting sanding vehicles. In the absence of such a directive, there can be no negligence *per se* based upon a failure to uphold a statute designed for the protection of the public. Therefore, it was error to base an instruction upon the Manual on Uniform Traffic Control Devices as it imposed no duty upon the deceased.

In view of the fact that no statutory standard of care was imposed upon the deceased, the standard of care which was imposed upon him is that discussed in the case of Blevins v. Weaver Construction Company, 150 Mont. 432 P.2d 378. In that case this court said that a driver of a vehicle employed in working upon the public highway is required to "keep such lookout for vehicles as an ordinarily careful man similarly situated would keep."

Respondents contend that even though the admission into evidence of Section 9 of the Safety Manual and the Uniform

Manual on Traffic Control Devices and the instruction based upon them may have constituted error, this error was corrected by failure on the part of the appellants to make proper objection to them and thus give the court a chance to change its decision. We have examined this contention and find it to be without merit. The objections raised to the evidence and the instruction, while perhaps not masterpieces of legal phraseology, certain were sufficient to indicate to the court what the appellants' argument was and to give the court an opportunity to correct itself.

Having found that prejudicial error was committed, a new trial should be had. Accordingly the judgment is reversed and the case remanded for new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN C. HARRISON concur.