436 P.2d 917

George E. CONNER and Fanny Mae Conner, husband and wife, Appellants,

v.

The STATE of Arizona, Appellee.

No. 2 CA–CIV 346.

Court of Appeals of Arizona.

Feb. 7, 1968.

**140**

W. Mercer Bouldin and Peter Chase Neumann, Tucson, for appellants.

Darrell F. Smith, Atty. Gen., Phoenix, J. Mercer Johnson, Special Asst. Atty. Gen., Tucson, for appellee.

KRUCKER, Judge.

Appeal from the superior court of Pima County from a judgment in favor of the appellee State of Arizona, defendant below.

Plaintiffs were involved in a motor vehicle head-on collision with a vehicle driven by Ernest Stone. The accident occurred near the junction of U. S. 80 (Inter-State 10) and State Route 83 on September 27, 1955. Both vehicles were traveling on U. S. 80, appellants traveling in a westerly direction and Stone in an easterly direction. Stone, apparently blinded to some extent by the brilliant Arizona sunshine, became confused and turned to the left from the existing route, driving his car to the left over the the solid white line into the line of oncoming traffic, causing the collision resulting in serious personal injuries.

Appellants contend that there were three alternative routes which an eastbound motorist could take at a single intersection. However, old U. S. 80 was somewhat beyond the intersection of State Route 83 as depicted in the following diagram:

The motorist could curve right according to the posted sign on State Route 83 to Sonoita, or continue straight ahead on new U. S. 80 in accordance with the sign. Old U. S. 80 had been abandoned by the State approximately six months prior to the accident and the road markings were partially obliterated but were still partially visible although the old markings were faint and obscure. Old U. S. 80 was not barricaded or marked in any way and the pavement was still in existence so that a motorist could take old U. S. 80. There were no signs of any kind posted to indicate the intersection of new U. S. 80 with the old U. S. 80 branching to the left beyond the first "Y". Two photographs in evidence assist in illustrating the situation.

The sole contention made on appeal for reversal is that the trial court erred in refusing Plaintiffs' Requested Instruction No. 12 dealing with the question of negligence per se.[1]

**I. Instruction No. 12 reads as follows:**

### NEGLIGENCE PER SE

"Ordinarily it is a question of fact for the jury to decide whether particular conduct was negligent. Such is not the case, however, where a specific rule made by the legislature to govern the kind of conduct in question is violated. Where a State agency or employee violates a statute or ordinance enacted for the safety of persons or property, such a violation is negligence as a matter of law. If such a violation is proven, it is your duty to find that conduct to be negligence, regardless of any opinion you may have about it.

It may become necessary for you to consider in your deliberation certain laws of this State which were in effect at the time of the accident in question and which controlled the operation of the placing of signs on State Highways. I will read them as follows:

The Commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways in this State. The uniform system shall collate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.
ARS—28–642:

(a) The Commission shall place and maintain such traffic-control devices, conforming to its manual and specifications, upon all State Highways as it deems necessary to indicate and to carry out the provisions of this chapter or to regulate, warn or guide traffic.'

The State Traffic Manual in use by the Highway Department on September 27, 1955 provides as follows:
'Section 102:

The advance turn marker shall be a plate 13 inches by 10 inches in size,.

We resolve the question presented on the basis that the Requested Instruction was properly refused because it was not an accurate statement of applicable law.

 In State v. Watson, 7 Ariz.App. 81 at 87, 436 P.2d 175, at 181 (opinion filed Dec. 29, 1967) (see note #6), we specifically reserved the question of whether a violation of the sign manual adopted in pursuance of A.R.S. 28–642 would be negligence per se. We are now faced with this precise question and answer it in the negative. We see a basic distinction between a statute or ordinance making it a crime to violate certain specific standards established for the safety of the public and a statute requiring an agency of the state to erect such signs as this agency "deems necessary." A statute of the latter type does not in our opinion lay down a firm line of demarcation so that all who cross that line are to be deemed guilty of violating a minimum standard. See 65 C.J.S. Negligence § 1(4), at 462:

"* * * and conduct not declared penal by law ordinarily should not be held by the courts to constitute negligence per se."

See also, 38 Am.Jur. Municipal Corporations § 162, at 832:

"The right to bring an action for damages for an injury resulting from the breach of a statutory duty depends upon the purview of the legislature in the particular statute and the language there employed.

The principle is that conduct not declared penal by law should not ordinarily be held by the courts as constituting negligence per se." Texas & Pacific Ry. Co. v. Day, Tex.Civ.App., 193 S.W.2d 722, at 726 (1945).

No decision directly in point has been called to our attention, but we believe a recent Montana decision, holding that under substantially identical statutory law there is no duty imposed upon workmen in the highway department to comply with a similarly adopted sign manual, has pertinence. Williams v. Maley, 434 P.2d 398 (Mont.

carrying a right or left arrow, the shaft of which is bent at a right angle, or at a 45 degree angle.

The advance turn marker shall be placed directly under a route marker to form a route turn assembly. A route turn assembly shall be used on a numbered route in advance of an intersection to indicate a turn or change in direction of that route at the intersection.

If several routes turn at an intersection, each shall be marked with a separate route turn assembly, whether they turn in the same or different directions. Where one or more routes turn while one or more proceeds straight through, the routes that turn shall be marked with route turn assemblies using the appropriate right or left advance turn markers, while the appropriate right or left advance turn markers, while the straight-through routes may be indicated by a similar assembly, using the vertical direction marker arrow.

Route turn assemblies for all routes shall be mounted on one post, preferably in a horizontal arrangement. Where there are routes turning in opposit directions, route turn assemblies for routes turning left shall be mounted to the left of the group of assemblies and those for right-turning routes to the right. If straight-through assemblies are used, the right-and (sic) left-turn assemblies shall be to the right and left of them respectively. In a vertical arrangement of assemblies, the straight-through assemblies shall be at the top, followed by left-and (sic) right-turn assemblies, respectively.'

Should you find that any party to this suit violated any of the above laws, then that party would be guilty of negligence as a matter of law and you should not debate that issue further, but should then consider the issue of whether that negligence was a proximate cause of the injury."

1967). In *Williams,* at 401, the court states:

"It is clear from a reading of the legislation authorizing the Highway Commission to adopt a uniform manual and authorizing the Commission to sign the highways in accordance with that manual, that the mere adoption of the manual did not give it a status equal to that of a statute. R.C.M.1947, § 32–2134, authorizes the Highway Commission to sign the highways of the state in conformity with the manual 'as it shall deem necessary.' The same statute makes it unlawful for anyone else to erect signs upon highways. Thus, until the Highway Commission has acted to direct the erection of a sign, there is no duty placed upon anyone to act in a certain manner just because the manual on Uniform Traffic Control Devices would seem to indicate that such a sign should be erected.

Without direction by the Highway Commission there is no duty to place a sign.

The evidence is abundantly clear that the Highway Commission had issued no directives dealing with the subject of signs on sanding operations. * * * In the absence of such a directive, there can be no negligence *per se* based upon a failure to uphold a statute designed for the protection of the public. Therefore, it was error to base an instruction upon the Manual on Uniform Traffic Control Devices as it imposed no duty upon the deceased."

As in *Williams,* supra, there is no showing here that the Highway Commission directed the erection of any sign to warn of this "Y" in the road. In the absence of this, we see no justification for a negligence per se instruction.

Judgment affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.