Floyida Stewart, as Administratrix and as Personal Representative of the Estate of Enoch Earl Stewart, Deceased, Plaintiff-Appellee, v. Max E. Beegun, et al., Defendants-Appellants, and Wolin-Levin, Inc., Defendant.

Gen. No. 51,616.

First District, Second Division.

June 2, 1970.

Rago, Kiely & Kages and Jones and Clark, of Chicago (Vincent M. Clark, of counsel), and Jerome H. Torshen, of Chicago, for appellants.

Samuel V. Bossov and Joseph R. Curcio, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This was an action for wrongful death brought by plaintiff as administratrix of the estate of her deceased son, Enoch Earl Stewart. Trial was had without a jury. The trial court found in favor of Wolin-Levin, Inc., and against plaintiff, and also found in favor of plaintiff and against the Beeguns and Rozen. Judgment was entered against the latter three defendants in the amount of $12,500, and they appeal. Plaintiff has not appealed from the judgment entered in favor of Wolin-Levin, Inc.

On October 30, 1963, Max E. Beegun and Alice Beegun were the beneficial owners of improved real estate located at 6146 South Kenwood Avenue in Chicago. The property was improved with a six-story, 67-unit apartment building which was serviced by an automatic self-service passenger elevator and a freight elevator. Prior to October 30, 1963, the Beeguns entered into a contract to sell the realty to Morris Rozen. The latter engaged Wolin-Levin, Inc., as managing agent of the building and a person named Johnnie Jordan as building manager. Both Wolin-Levin, Inc., and Jordan were acting in those respective capacities on October 30, 1963. Jordan was not made a party to this action.

The mishap occurred sometime between 7:30 and 8:30 on the morning of October 30, 1963. The Chicago Fire Department received a call to investigate a report of an accident involving the passenger elevator in the building. Chicago Police Officer Felix Muniz testified that he observed a fire truck proceeding to the scene and that he followed in his police vehicle for the purpose of controlling traffic at the scene. When he arrived at the building he was informed of the accident and immedi-

122

ately went to the fourth floor of the building to investigate. He opened the elevator hatchway door and looked down the shaft. He testified that he observed the elevator cage stopped between the third and fourth floors, and "one kid crying inside the elevator cage and . . . another kid bent between the wall and the elevator. It was a boy." The boy wedged between the elevator cage and the wall was plaintiff's deceased, a tenant on the third floor of the building. The boy with the deceased also lived in the building.

The officer testified that he believed plaintiff's deceased to have been alive when he first observed him because he saw the boy's arm move. A hole was made in the wall and the boy was removed. The officer testified that the boy's chest was crushed and that he was pronounced dead at a hospital. The deceased was seven years of age at the time of death and weighed about 35 pounds.

The passenger elevator was equipped with a collapsible, or "scissors" type, car gate. At each landing there was a hatchway or outer door equipped with an electric interlocking device which regulated the movement of the cage. Only when the cage gate and the hatchway door were closed could the elevator cage be put into motion. Attachment of a large metal plate to the shaft side of each hatchway door was required to eliminate excessive space between the hatchway door and the elevator cage gate. The plate, known as a "pan guard," measured three inches in depth, and covered the entire width of the door, from the bottom upwards to a height of about four feet.

The pan guard was involved in the functioning of the interlock system in that, if it were properly in place, the electric circuit of the interlock system would be complete and the elevator would be unable to move with any doors open. In the absence of a pan guard on a hatchway door, the circuit could not be completed and the elevator

cage would be able to move although the doors were open.

Two City of Chicago elevator inspectors, both of whom inspected the scene shortly after the accident and one of whom arrived on the premises on a routine elevator inspection about the same time as the police and firemen arrived at the scene, testified that the pan guard was missing from the third-floor hatchway door. Without the pan guard the clearance between the elevator cage gate and the hatchway door was about six inches, a space greater than that permitted by an applicable city ordinance. Neither inspector could state whether the pan guard was missing from the third-floor door prior to the mishap, although they testified that the hatchway door was removed from its hinges and placed against the wall.

Officer Muniz also testified that while he observed the two boys in the elevator shaft and in the cage through the fourth-floor elevator hatchway door, that door should not have been able to open while the elevator was between floors. The officer further testified, without objection, that he ascertained from the companion of the plaintiff's deceased that the two boys "got in the elevator. One kid went to get out on the third floor, the other kid wanted to get out on the sixth, and the kid pushed the button to go to six. The kid that got out on the third floor, that is an accident." (Sic.)

Norman Levin was called by plaintiff under section 60 of the Civil Practice Act and testified that he represented Wolin-Levin, Inc., the managing agent of the building. He stated that his firm had been employed by Morris Rozen as managing agent prior to the mishap, that his firm engaged an elevator service company which serviced the elevators in the building on a bimonthly basis, that when his firm assumed the management of the building there were pan guards on all the hatchway doors, and that his firm was never served with notice from the city as to any elevator ordinance violation in the build-

124

ing. Levin testified that any bills, contracts, or the like, received by Wolin-Levin, Inc., in connection with the building were stapled to the monthly statements and forwarded directly to "the owners."

Johnnie Jordan, who was the only witness called by the defendants, testified that he was the building manager on the day of the mishap and that he was called to the scene. He testified that he never received notice of an ordinance violation with regard to the elevators, that he informed the tenants in the building not to permit children under twelve years of age to operate an elevator alone, but could not recall if plaintiff received such notice, and that whenever there would be a malfunction of an elevator he would notify the elevator service company which would make the necessary repairs. Jordan further testified that he was engaged by Morris Rozen to manage the building.

The Beeguns and Rozen maintain that the finding against them, but in favor of Wolin-Levin, Inc., is inconsistent and must be set aside. They argue that the finding against them is based upon the doctrine of respondeat superior, and that since their agent (Wolin-Levin, Inc.) was exonerated, they must be exonerated.

In their opening brief the Beeguns and Rozen admit that they acted in connection with the operation and maintenance of the elevators, "only through their agents." They then go on to state that Wolin-Levin, Inc., and Jordan were agents hired by Rozen. In her brief plaintiff states that apart from the question of respondeat superior, the Beeguns and Rozen were guilty of dereliction of a duty placed upon them by the City of Chicago elevator ordinance and breached their common-law duty to maintain a safe passenger elevator in the building.

In a reply brief filed only on behalf of the Beeguns, by counsel different than the counsel who filed the opening brief, they argue that the elevator ordinance did not apply to them, because they were owners out of posses-

125

sion. They further alter the position stated in their brief in chief by maintaining that they did not act through either Wolin-Levin, Inc., or Jordan, but that they divested themselves of possession and control of the elevators when they entered the contract for sale with Morris Rozen. Supreme Court Rule 341(g) provides that the reply brief shall be confined strictly to replying to arguments presented in the brief of the appellee.

We are of the opinion that sufficient competent evidence was introduced to authorize the trier of fact to find that the Beeguns and Rozen violated their common-law duty as common carriers to maintain a safe passenger elevator. There was evidence that these defendants failed to exercise the care and diligence required of a common carrier. Carson v. Weston Hotel Corp., 351 Ill App 523, 537, 115 NE2d 800.

The evidence shows that the Beeguns were the beneficial owners of the property and that prior to the mishap they contracted to sell to Rozen. As beneficial owners the Beeguns were entitled to the possession and control of the premises including the elevators. The evidence also shows that as contract purchaser Rozen was also entitled to possession and control of the premises and that he engaged Jordan and Wolin-Levin, Inc., as building manager and managing agent, respectively.

Plaintiff's deceased was rightfully a passenger on the elevator and both the Beeguns and Rozen were plaintiff's deceased's common carriers. They therefore owed him the highest degree of care for his safety while a passenger on the elevator. (See Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520, at 153.)

Plaintiff's evidence showed that the elevator was defective in two respects, namely, the excessive space between the elevator cage gate and the hatchway door which was due to the missing pan guard, and the ability of the elevator cage to move while doors were open.

■ The evidence adduced on behalf of the Beeguns and Rozen consisted of the testimony of Johnnie Jordan, who denied knowledge that any defect existed in the elevator. The testimony by Jordan and Levin that the elevators were serviced by an independent service company on a bimonthly basis cannot exculpate the Beeguns and Rozen; nor can these defendants be absolved from liability by delegating the maintenance of the elevators to others. See Kopta v. Greer Shop Training, Inc., 327 Ill App 470, 64 NE2d 570; Carson v. Weston Hotel Corp., 351 Ill App 523, 115 NE2d 800. Based upon all the evidence in the case, the trial judge had a right to find that the Beeguns and Rozen failed to exercise the high degree of care required of them as common carriers in the maintenance and operation of the elevator.

■ ■ The Beeguns failed to introduce any evidence tending to show that they, as the beneficial owners of the property, relinquished possession and control of the property to Rozen. We agree that an owner of property, who is out of possession and who has relinquished control to a lessee, or the like, will generally be held not liable for injuries resulting from defective or dangerous unconcealed conditions upon the premises not theretofore existing or known to him. Kopta v. Greer Shop Training, Inc., 327 Ill App2d 470, 64 NE2d 570. This is not the situation in the case at bar. Although it is alleged in the brief of the Beeguns that they had relinquished control and possession of the building to Rozen, they failed to introduce the contract of sale, or any testimony relative thereto in an effort to substantiate this claim.

■ With regard to the contention that the Beeguns and Rozen should have been exonerated in view of the finding of the trial court in favor of Wolin-Levin, Inc., this question may be raised only as to Rozen, since the

127

uncontroverted evidence is that neither Jordan nor Wolin-Levin, Inc., was agent for the Beeguns.

Jordan, who was not made a party to these proceedings, was also the agent of Rozen in the operation of the property. Under the complaint, Rozen was charged with negligence not only through Wolin-Levin, Inc., a defendant, but individually as well. Bunyan v. American Glycerin Co., 230 Ill App 351, 355–59.

Jordan was the manager of the building whereas Wolin-Levin, Inc., was the managing agent. It appears that Jordan was responsible for the day-to-day running of the building, and was in a position to detect the defect which existed in the elevator. Jordan testified that he was familiar with the operation of the interlock system on the elevator. He also testified that he notified all tenants not to permit children under the age of 12 years to ride the elevator alone, but he could not remember having so advised plaintiff. Jordan contacted the elevator service company whenever the elevators malfunctioned. Levin, on the other hand, testified that Wolin-Levin, Inc., forwarded all bills, contracts, and the like, directly to the owners of the building whenever they were received by Wolin-Levin, Inc., stapled to the monthly statements. There was sufficient evidence presented from which the trial court could find that Jordan was guilty of negligence, and that Wolin-Levin, Inc., was not.

The final point raised by the Beeguns and Rozen is that there was no evidence showing any wrongful act or omission on their part, nor any evidence tending to show any defect in the elevator at the time of the occurrence. We disagree.

While the evidence against the defendants was largely circumstantial, it was competent and sufficient to support the finding and judgment. There was sufficient evidence, from which the trial court could find a breach of a common-law duty in the operation and maintenance of the

elevator. Inferences in favor of plaintiff and against the Beeguns and Rozen may be drawn from such evidence as the missing pan guard, the excessive space between the hatchway door and the elevator cage gate, the failure of the interlock system to function properly, and the uncertainty of Jordan as to the notice to plaintiff not to allow children under 12 years of age to ride the elevator alone.

The contention that the finding is against the manifest weight of the evidence is unavailing.

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.