*322 MR. JUSTICE MORRISON
delivered the Opinion of the Court.
Defendants Otis Elevator Company (Otis) and Country Club Manor, co-partnership, d/b/a Mueller Apartments (Mueller), appeal from a judgment entered by the District Court of the Second Judicial District, Silver Bow County, awarding $108,000 plus costs and damages for personal injury.
At about 1:00 o’clock a.m. on August 20, 1981, plaintiff went to the Mueller apartment building to visit a tenant. She entered the lobby and pushed the elevator call button. After briefly visiting with other people in the lobby, plaintiff opened the hoistway door to the elevator and stepped forward. The elevator car was not at the lobby floor level and plaintiff fell approximately fifteen feet down the elevator shaft. Plaintiff instituted this action to recover for her personal injuries suffered in the fall.
Mueller had a maintenance agreement with Otis whereby Otis agreed to make monthly service calls and provide emergency services when notified of problems. Following the accident, Mueller notified Otis. Otis dispatched an employee to the premises. Upon inspection a brass hook, which was part of the lobby floor interlock system, was found to be bent. The elevator door, under these conditions, could be opened without the elevator car being present.
Plaintiff was taken to the hospital after the accident and found to have a blood alcohol content of .16%. Plaintiff’s intoxication was considered by the jury.
The trial court found defendants negligent as a matter of law and submitted causation and contributory negligence to the jury. The jury found plaintiff to be contributorily negligent and attributed 20% of the total cause to plaintiff’s conduct. The balance of cause was divided 40% to Mueller and 40% to Otis.
The following issues are presented on appeal:
1. Whether the District Court erred in finding Otis and *323 Mueller or either of them guilty of negligence as a matter of law?
2. Whether the District Court erred in instructing the jury that defendants owed to plaintiff the highest degree of care?
3. Whether the District Court erred in refusing defendant’s proposed instruction on independent intervening cause?
4. Whether the District Court erred in excluding the testimony offered by Otis from a toxicology expert regarding the number of drinks consumed by the plaintiff on the night of the accident?
5. Whether the District Court improperly awarded certain costs to the plaintiff?
ISSUE 1:
WHETHER THE DISTRICT COURT ERRED IN DIRECTING A FINDING OF NEGLIGENCE AGAINST OTIS AND MUELLER OR EITHER OF THEM?
The trial court premised its negligence ruling on defendant’s violation of an administrative safety code and upon the application of res ipsa loquitur. If a directed finding of negligence was proper, we will not reverse the case because the trial court premised its ruling upon a faulty basis. Laurie v. M. & L. Realty Corporation (1972), 159 Mont. 404, 408, 498 P.2d 1192, 1194.
Before examining the applicability of res ipsa loquitur to the case at bar, we must see if there were specific acts of negligence which were unrebutted and which would permit a directed verdict on negligence. If such negligence is found and was unrebutted, the finding can be sustained without resolving the res ipsa issue.
A case may only be withdrawn from the jury if there are no genuine and material issues of fact about which twelve reasonable people can disagree. Sistock v. Northwestern Telephone Systems, Inc. (Mont. 1980), 615 P.2d 176, 37 St.Rep. 1247. Because the record contains different evidence as to each of the two defendants, the case against *324 each of the defendants is discussed separately.
Mueller is the owner of the premises in question. The parties agree that plaintiff is an invitee. A property owner’s duty toward an invitee is to use ordinary care to keep the premises reasonably safe and to warn the invitee of any hidden or lurking dangers. Cereck v. Albertson’s, Inc. (1981), 195 Mont. 409, 637 P.2d 509; Rennick v. Hoover (Mont. 1980), 606 P.2d 1079, 37 St.Rep. 308. However, in the operation of an elevator, we feel the owner owes a higher degree of care. The elevator performs the function of a common carrier in transporting people from one floor to another. Experience teaches that the public reposes trust in those who furnish that carriage, that they will be transported safely from one floor to another. A number of jurisdictions have held that, with respect to operation of the elevator itself, the premises owner owes the highest degree of care. Johnson v. Hopkins (1925), 213 Ala. 492, 105 So. 663; Stewart v. Beegun (1970), 126 Ill. App. 2d 120, 261 N.E.2d 491. We feel that the best public policy is served by adopting this higher standard for Montana.
Plaintiff contends that Mueller was negligent as a matter of law for violating specific provisions of the Montana Safety Code for elevators. The District Court found that the defendants were negligent per se for having violated the safety code relating to the operation of the hoistway-door interlock device. The code defines this device and its integrated system in the following manner:
“Hoistway-Door Electric Contact. An electrical device, the function of which is to prevent operation of the driving-machine by the normal operating device unless the hoistwaydoor is in the closed position . . .
“Hoistway-Door or Gate Locking Device. A device which secures a hoistway-door or gate in the closed position and prevents it from being opened from the landing side except under certain specified conditions.
“Hoistway-Door Combination Mechanical Lock and Electric Contact. A combination mechanical and electrical de-
*325 vice with two related, but entirely independent functions, which are:
(a) to prevent operation of the driving-machine by the normal operating device unless the hoistway door is in the closed position; and
(b) to lock the hoistway door in the closed position and prevent it from being opened from the landing side unless the car is within the landing zone.
“NOTES (Hoistway-Door Combination Mechanical Lock and Electric Contact):
“(a) These functions are subject to the modifications specified in Rule 111.4b of this Code.
“(b) As there is no positive mechanical connection between the electric contact and the door locking mechanism, this device insures only that the door will be closed, but not necessarily locked, when the car leaves the landing. Should the lock mechanism fail to operate as intended when released by a stationary or retiring car-cam device, the door can be opened from the landing side even though the car is not at the landing. If operated by a stationary car-cam device, it does not prevent opening the door from the landing side as the car passes the floor.
“Hoistway-Door Interlock. A device having two related and interdependent functions which are:
“(a) to prevent the operation of the driving-machine by the normal operating device unless the hoistway door is locked in the closed position; and
“(b) to prevent the opening of the hoistway door from the landing side unless the car is within the landing zone and is either stopped or being stopped.” ANSI-ASME A17.1 - 1981 at 4.
The unrebutted testimony of Ken Marshall, an elevator inspector for the State of Montana, showed that when an interlock system is functioning in accordance with the safety code, the door cannot be opened if the elevator car is not at the floor. Mr. Marshall, without contradiction, testified that the particular interlock system in the defendant’s *326 elevator was operating in violation of the safety code.
We held in Stepanek v. Kober Construction (Mont. 1981), 625 P.2d 51, 38 St.Rep. 385, that a violation of an administrative code is evidence of negligence but is not negligence per se. Plaintiff seeks to distinguish Stepanek for the reason that the Montana Legislature mandated the adoption of the safety code which is here involved. Specific reliance is placed upon Sections 50-60-203 and 50-60-702, MCA. These sections read as follows:
“50-60-203: Department to adopt state building code by rule. (1) The department shall adopt rules relating to the construction of, the installation of equipment in, and standards for material to be used in all buildings or classes of buildings, including provisions dealing with safety, sanitation and conservation of energy . . .
“(2) The department may adopt by reference nationally recognized building codes in whole or in part, but this does not prevent the department from adopting rules more stringent that those contained in such codes.”
“50-60-702: Department to adopt inspection standards — certification of inspectors. (1) The department shall adopt standards for passenger elevator and escalator inspections that assure compliance with the requirements of the state building code.
“(2) The department shall adopt rules for the certification of maintenance and insurance company inspectors who may inspect passenger elevators and escalators pursuant to 50-60-701.”
Plaintiff argues that the legislature cannot set forth verbatim a lengthy and detailed building code. We agree. However, the legislature did not incorporate this administrative code by reference. The legislature simply mandated that the Department of Administration adopt rules. The Department did so. The legislature did not act further to adopt those rules. Under these circumstances, the administrative code does not become part of a statute by reference. Therefore, violation of the code is evidence of negligence *327 rather than negligence per se.
The unrefuted evidence in this case showed a violation of the administrative code and such a violation provided clear evidence of negligence. In fact, the defendant-owner submitted the following jury instruction which was refused.
“You are instructed that both defendants in this case are subject to the provisions of the Safety Code for the Elevators and Escalators, ANSI/ASME A17.1, 1981, as adopted by the State of Montana pursuant to law. If you find from the evidence that the elevator at the Mueller Apartments at the time of plaintiffs accident was in an operating condition which was in violation of the safety code and that violation was a proximate cause of plaintiffs injuries, you are instructed that such a violation raises a rebuttable presumption of negligence on the part of one or both of the defendants. The defendants then have the burden of proving by a preponderance of the evidence that one or both of them did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.”
We do not agree with the proposed instruction in that the burden of proof does not actually shift to the defendant. We do agree that violation of the code provided evidence of negligence and that it was incumbent upon the defendant to come forward with evidence that would show the defendant exercised due care. This the defendant-owner failed to do. We have carefully examined the record and defendant-owner called but two witnesses. The owner, John Cote, was the first witness. A fair summary of Mr. Cote’s testimony is that he had no personal knowledge of the condition of the elevator at the time the accident happened and immediately prior thereto. He testified that he relied upon Otis for servicing and maintaining the elevator and upon his building manager to discover problems and report them to Otis.
The building manager was the other witness. Sharon Stephens stated that she had previously discovered problems with the elevator and reported them to Otis. She had no *328 knowledge of any defects in the elevator immediately prior to the time the accident occurred. However, defendant Mueller offered no testimony to show that either the building manager or the owner ever inspected the elevator to determine whether the interlocking device was defective or whether the door would open with the elevator at a remote location.
The record in this case shows a violation of Administrative Code providing evidence of negligence. The defendant has in no way attempted to rebut this testimony except to show that responsibility for operation and maintenance of the elevator was contracted away to Otis.
Plaintiff contends that responsibility for a safe elevator could not be delegated by the owner to Otis. Plaintiff argues nondelegable duty. The concept was first articulated by the Montana Supreme Court in Ulmen v. Schwieger,(1932) 92 Mont. 331, 12 P.2d 856. In Ulmén, this Court held that, although one is not generally liable for the negligent acts of an independent contractor, nevertheless, one remains liable for the work of an independent contractor where the work to be done is intrinsically dangerous. The nondelegable duty recognized in the Ulmén case was cited with approval and relied upon in Stepanek v. Kober Construction, supra.
Courts of other jurisdictions recognize that elevators, if defective, are dangerous instrumentalities. Sweeney v. Levy (1948), 67 Pa. D.C.5. In Stewart v. Beegun, supra, the Illinois Court held that a defendant-owner could not be absolved from liability by a showing that owner had delegated maintenance of the elevator to another. In accord see Phegley v. Graham (1948), 358 Mo. 551, 215 S.W.2d 499.
In this case the evidence clearly shows that defendant Mueller violated the Administrative Code provisions covering elevators. This evidence was not attacked nor impeached. Rather, Mueller defended by showing reliance upon Otis. If Otis was negligent in failing to discover the defect on August 14, Mueller would be liable under nondel *329 egable duty. If the defect was not there at the last Otis inspection it had to have developed at a time that only Mueller was in control. Mueller has presented no evidence to show what Mueller did since the last inspection which would rebut the code violation. Under these circumstances the trial court was correct in directing a finding of negligence against defendant Mueller.
The case against defendant Otis is different. Plaintiff presented expert testimony which, if believed, would prove that the defective hook existed prior to the time Otis made its inspection on August 4, slightly more than two weeks prior to the accident. However, Otis presented testimony from its inspector that the hook was examined at the time of the inspection on August 4. This witness testified that the hook was in good shape at that time. This testimony, if believed, would allow the jury to infer that the hook became bent at a time following the inspection. Under these circumstances the jury could return a defense verdict for Otis.
We must emphasize that Otis had no ownership interest in the elevator. In 1980 Otis became obligated to service the elevator pursuant to the provisions of a contract with the owner, Mueller. The inspection obligation was to be discharged monthly. Otis inspected on August 4. No calls were made by the owner to Otis requiring Otis to return to the premises subsequent to August 4 and prior to the happening of this accident on August 20. If the jury believed plaintiff’s expert, then the jury would find against defendant Otis for the reason that the defect must have been there at the time of the inspection. However, if the jury chose to believe Otis’ inspector, then the jury could find for defendant Otis on the basis that the hook became bent following the inspection and no breach of duty occurred on the part of Otis.
If the case against Otis is retried, the question may arise regarding applicability of the Administrative Code to Otis. Otis here argues the code only applies to owners. Al *330 though Section 2.32.604(8) A.R.M. makes the owner responsible for obtaining a certificate of inspection for elevators, we cannot say the code provisions generally should be so limited. This Administrative Code creates standards. The violation of those standards is evidence of negligence on the part of anyone who properly has a duty to prevent such violation. This may include an elevator maintenance company. However, any evidence of code violation can be rebutted by showing that Otis only had a duty to make monthly inspections and respond to emergency calls. If the jury were to find that any code violation did not exist at the time of the last required inspection and no calls were made summoning special service, then Otis would be absolved.
The judgment against Otis must be vacated and the case returned for trial. Since we affirm the directed finding against Mueller based on specific acts of negligence, we need not consider the res ipsa loquitur question. Upon any retrial against Otis, should plaintiff seek to rely on res ipsa to create a jury issue, the trial court should apply the principles of Tompkins v. Northwestern Union Trust Co. (Mont. 1982), [197 Mont. 170,] 645 P.2d 402, 39 St.Rep. 845, to the facts adduced at trial.
ISSUE 2:
WHETHER THE DISTRICT COURT ERRED IN INSTRUCTING THE JURY THAT DEFENDANTS OWED TO PLAINTIFF THE HIGHEST DEGREE OF CARE?
Plaintiff argues it was proper to instruct the jury that defendants owed to plaintiff the highest degree of care, although the court had previously directed a finding of negligence against defendants. The basis for plaintiffs argument is that the jury must know that the highest degree of care is owed in order that percentages of negligence can be assigned the respective parties. Technically this is not so. The jury is properly charged to find whether the plaintiff is negligent and if so, the percentage that the conduct of each negligent party contributed to the cause. In other words, the jury does not gauge the negligence of plaintiff by com *331 paring it to the negligence of defendant. If all were negligent then the jury determines the percentage that the conduct of each contributed to the totality of plaintiffs injuries.
We do find that the instruction was harmless error. We have previously decided that the highest degree of care was owed. Under the circumstances, it was not prejudicial to give the instruction.
ISSUE 3:
WHETHER THE DISTRICT COURT ERRED IN REFUSING DEFENDANT’S PROPOSED INSTRUCTION ON INDEPENDENT INTERVENING CAUSE?
Otis claims error in failing to give its offered instruction No. 12. That instruction said:
“In determining whether a Defendant’s negligence in creating a hazard was a proximate cause of the accident, the following test is to be applied:
“Did the wrongful act, in a natural and continuous sequence of events, which might reasonably be expected to follow, produce the injury? If so, it is a concurring proximate cause of the jury even though the later negligent act of another person cooperated to cause it.
“On the other hand, if the latter’s negligent act in causing the accident was of such a character as not reasonably to be expected to happen in the natural sequence of events, then such later act of negligence is the independent, intervening cause and therefore the sole proximate cause of the injury.”
While the above-quoted instruction may not be erroneous, it was not necessary and in fact is confusing. Court’s instruction No. 7 stated:
“You are instructed that the proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any new cause, produces the injury, and without which the injury would not have occurred.” (Emphasis supplied.)
Court’s instruction No. 7 sufficiently stated the law of intervening cause. We do add that the old language employed *332 to proximate cause instructions is being discarded in favor of language more easily understood by a lay jury. However, court’s instruction No. 7 was an accurate statement of the law and adequately covered the subject.
ISSUE 4:
WHETHER THE DISTRICT COURT ERRED IN EXCLUDING THE TESTIMONY OFFERED BY OTIS FROM A TOXICOLOGY EXPERT REGARDING THE NUMBER OF DRINKS CONSUMED BY THE PLAINTIFF ON THE NIGHT OF THE ACCIDENT?
Defendants claim error because the trial court refused to allow a toxicology expert to testify about the number of drinks consumed by the plaintiff on the night of the accident. Plaintiff’s alcoholic blood content of .16% was admitted without objection. The toxicologist, over plaintiff’s objection, testified about the affect upon a person of different ranges of alcohol blood content. This expert was then asked to give testimony as to “the amount of alcohol necessary to be consumed” for plaintiff to have a blood alcohol content of .16%.
The admission of this kind of testimony is discretionary with the trial court. Since the jury had already received evidence regarding the blood alcohol content and the affect that such a blood alcohol content would have upon a person, the court was justified in finding that the jury need not be told by the expert the number of drinks consumed by the plaintiff. The relevant consideration is whether the plaintiff was intoxicated, and if so, how that affected the plaintiff’s conduct on the night in question. Other probative evidence on this issue was considered by the jury. The trial court is vested with great latitude in ruling on the admissibility of expert testimony. Krohmer v. Dahl (1965), 145 Mont. 491, 402 P.2d 979. We hold that the the trial court’s ruling here was not clearly erroneous nor sufficiently prejudicial to require a new trial.
*333 ISSUE 5:
WHETHER THE DISTRICT COURT IMPROPERLY AWARDED CERTAIN COSTS TO THE PLAINTIFF?
Defendants claim that the costs of two depositions and certain photographs are not recoverable. Both the photographs and the depositions were used at time of trial. The trial court, after hearing and briefs, entered its order on August 2, 1983, which stated:
“After considering the memoranda on file and the oral arguments heard in the above-entitled court on July 15, 1983, this court finds that the depositions of Stephens and -, although not introduced into evidence, were used during the trial for impeachment purposes. The court further finds that the photographs were necessary expenses as contemplated by Section 25-10-201(a), MCA (1981).”
Deposition costs are allowable where the deposition is used at trial. These depositions were used to impeach. Therefore the costs were recoverable. Morrison-Maierle, Inc. v. Selsco (Mont. 1980), 186 Mont. 180, 606 P.2d 1085, 1088, 37 St.Rep. 299, 303.
With respect to the photographs, Section 25-10-201 (a), MCA, allows the taxing of costs for “reasonable and necessary expenses as are taxable according to the course and practice of the court or by expressed provision of law”. The trial court’s broad authority for taxing costs permitted the taxing of this photography expense.
The judgment against defendant Country Club Manor, co-partnership d/b/a Mueller Apartments, is affirmed. The judgment against Otis Elevator Company is vacated and the cause remanded for trial in accordance with the legal principles enunciated herein.
MR. CHIEF JUSTICE HASWELL and MR. JUSTICES SHEA, HARRISON and GULBRANDSON concur.