JUSTICE TRIEWEILER
specially concurring and dissenting.
I concur with the majority’s conclusion under Issue I that Michael Brockie is entitled to a new trial, based upon misconduct of the juror, Francis Rice.
I also concur with the majority’s conclusion under Issue IV that the District Court did not abuse its discretion by limiting the redirect examination of Robert Charlton. However, I do not agree with all that is said in the majority’s rationale for that conclusion. Specifically, I do not agree that the questions posed to Charlton on redirect examination were improper for purposes of impeachment. However, I do agree that the District Comb has broad discretion when it rules on the propriety of cross-examination or redirect examination. In this case, I agree that that discretion was not abused.
I dissent from the majority’s conclusions under Issues II and III which relate to the District Court’s jury instructions.
I conclude that based on our prior case law, and based upon the better public policy, the jury should have been instructed that a violation of the Manual on Uniform Traffic Control Devices is negligence as a matter of law.
While the majority relies on our prior decisions in Cash v. Otis Elevator Company (1984), 210 Mont. 319, 684 P.2d 1041, and Williams v. Maley (1967), 150 Mont. 261, 434 P.2d 398, I conclude that our decision in Martel v. Montana Power Company (1988), 231 Mont. 96, 752 P.2d 140, is controlling.
The Williams decision is not relevant to our conclusion on this issue because it was decided in 1967, and as pointed out by the majority, the statute upon which it relied was materially amended in 1981. At the time that Williams was decided, Section 32-2134, R.C.M. (now *504 Section 61-8-202, MCA), made no reference to the Manual on Uniform Traffic Control Devices. Therefore, the Highway Commission had no direct mandate from the legislature to consider or adopt that manual. The majority opinion points out that that section was amended in 1981. However, when quoting the statute, the majority fails to include the amended portion. Significantly to our decision, the full statute now reads as follows:
The department of transportation shall adopt a manual for a uniform system of traffic-control devices consistent with this chapter for use upon highways within the state. This uniform system shall correlate with and so far as possible conform to the manual on uniform traffic control devices, as amended. [Emphasis added.]
Section 61-8-202, MCA.
In other words, at the time that Williams was decided, the statute which authorized the Highway Commission to adopt a manual for uniform signing of highways made no specific reference to the MUTCD. At all times relevant to this action, the statute in question mandated that the Department of Transportation adopt a manual and that it conform as closely as possible to the MUTCD.
The correct analysis under our case law regarding when the violation of national standards, such as the MUTCD, constitutes negligence per se is found in Herbst v. Miller (Mont. 1992), 830 P.2d 1268, 49 St. Rep. 40. In that case, we gave the following explanation of the legal effect of national standards which have been adopted in Montana:
We have held that violation of an administrative rule adopted under Section 50-60-203, MCA, as in the instant case, is not negligence per se but instead is evidence of negligence. Cash v. Otis Elevator Company (1984), 210 Mont. 319, 684 P.2d 1041. In Otis, we recognize that Section 50-60-203, MCA, mandates the Department of Commerce to adopt rules but that the legislature did not act further to incorporate by reference the rules adopted by the agency. In contrast, we held that violation of a national standard adopted by specific statutory reference is negligence as a matter of law. Martel v. Montana Power Company (1988), 231 Mont. 96, 752 P.2d 140 ....
... The Town of Belgrade adopted a resolution whereby the UBC [Uniform Building Code] is incorporated by reference ....
... Miller’s failure to install a handrail leading to the basement apartment is a failure to maintain her building in adherence with the ordinance and is therefore a violation of the ordinance. It is *505 long settled that violation of a city ordinance constitutes negligence per se. Marsh v. Ayers (1927), 80 Mont. 401, 260 P. 702.
Herbst, 830 P.2d at 1271.
The Town of Belgrade adopted the Uniform Building Code by reference, and therefore, we found that violation of the building code was negligence per se.
The Montana Legislature mandated that the Department of Transportation “adopt a manual for a uniform system of traffic-control devices,” and that so far as possible it conform to the “manual on •uniform traffic control devices, as amended.” Section 61-8-202, MCA. From that point on, the MUTCD was clearly “a national standard adopted by specific statutory reference.” I fail to see any practical difference between the circumstances in this case, and the circumstances in Herbst or Martel. Furthermore, I fail to see any justification from a public policy point of view for giving greater legal significance to the Uniform Building Code or the National Electric Safety Code, than the Manual on Uniform Traffic Control Devices. As a practical matter, they are all part of the law of the State of Montana. They were all enacted to protect the public and make Montana a safer place to live, and the violation of one creates just as much potential for danger as the violation of another. The majority opinion constructs intellectual distinctions which make no practical difference, and which are neither supported by our prior case law nor common sense. It does nothing to further the historical purposes of the law of negligence.
Finally, I dissent from the majority opinion because I disagree with this Court’s conclusion, which had its genesis in Stepanek v. Kober Construction (1981), 191 Mont. 430, 625 P2d 51, that there is any rational basis for treating the violation of a statute any differently than the violation of a lawfully enacted safety regulation. Both the statute and the safety regulation have the same purpose. Both are enacted for the public’s protection, and presuming that proper procedures were followed, both are equally enforceable in the event of their violation. When it comes to determining whether one or the other can be used as a threshold standard by which to evaluate the exercise of reasonable care, what reason is there to treat one differently than the other?
Safety regulations are adopted by the various state agencies, or adopted pursuant to notice to interested parties. They are enacted to further a legislative purpose for which that agency was established, and they presumably establish standards of reasonable conduct in *506 the industry or area of activity with which they are concerned. Therefore, when it comes to a conclusion about whether a violation of the law amounts to negligence per se, I would draw no distinction between violations of statutory law and violations of regulatory law.
For these reasons, I conclude that the jury was instructed improperly and dissent from that part of the majority opinion which concludes otherwise.
JUSTICE HUNT concurs in the foregoing concurrence and dissent of JUSTICE TRIEWEILER.